**Vernon HEDGE et ux., Appellants,**

v.

**George A. BRYAN, Jr., Appellee.**

**No. 270.**

Court of Civil Appeals of Texas.

Tyler.

Feb. 29, 1968.

Rehearing Denied March 28, 1968.

Richard W. Fairchild, Nacogdoches, for appellants.

Ramey, Brelsford, Flock & Devereux, Richard Grainger, Tyler, for appellee.

MOORE, Justice.

Plaintiffs, Vernon Hedge and wife, Martha Hedge, brought suit against defendant, George A. Bryan, Jr., to recover damages for personal injuries sustained by Martha Hedge on January 31, 1964, when the automobile driven by Bryan collided with the automobile driven by Mrs. Hedge while she was stopped at a street intersection in obedience to a traffic light. Plaintiffs alleged in their petition that Mrs. Hedge sustained personal injuries as a result of the collision which were proximately caused by numerous acts of negligence on the part of Bryan. Prior to trial, plaintiffs waived their claim for property damage and sought damages

only for personal injuries sustained by Mrs. Hedge. Defendant Bryan denied generally the allegations of plaintiffs' petition and invoked the doctrine of sudden emergency, and in the alternative, alleged that the collision was the result of an unavoidable accident.

Trial was before a jury. In response to the special issues, the jury found Bryan guilty of negligence in failing to keep a proper lookout, which was a proximate cause of the collision, but exonerated Bryan on all other acts of negligence. The jury further found that Bryan was not acting in an emergency and that the collision was not the result of an unavoidable accident. In response to Special Issue No. 11, inquiring as to whether or not Mrs. Hedge was injured as a result of the collision, the jury answered "We do not." Immediately following that issue, the court submitted the issue of damages for personal injuries in Special Issue No. 12. In connection with the damage issue, however, the court, without objection, instructed the jury that they were to answer Special Issue No. 12 only in the event they had answered Special Issue No. 11 in the affirmative. Consequently, in view of their answer to Special Issue No. 11, the jury did not answer Special Issue No. 12. Based upon the verdict, the trial court rendered a take-nothing judgment against the plaintiffs, and after their amended motion for a new trial had been overruled, plaintiffs duly perfected this appeal. The parties will hereinafter be referred to as "appellants" and "appellee."

By their first point of error, appellants say that the trial court erred in refusing to grant their motion for new trial because counsel for appellee judicially admitted Mrs. Hedge was injured by stating in his closing argument to the jury that she was injured and there was no way the jury could answer Special Issue No. 11 except by a "We do" answer.

In connection with this point, as well as other points subsequently to be discussed, it should be pointed out that even though the evidence shows without dispute that Mrs. Hedge had suffered a previous back injury, appellants did not plead aggravation of such injury nor did the court define the term injury or instruct the jury with reference to aggravation of previous injuries or infirmities. The question before the jury was simply whether or not Mrs. Hedge sustained an injury as a result of the collision.

The general rule is that in order for a statement to constitute a judicial admission, it must be (1) clear, deliberate and unequivocal and (2) it must be a statement of fact, rather than opinion. United States Fidelity & Guaranty Co. v. Carr, 242 S.W. 2d 224 (Tex.Civ.App., 1951, writ ref.); Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415.

While the record shows that counsel for appellee did, at one point in his argument, tell the jury that the evidence was such that he felt the jury was required to make a "We do" answer to Special Issue No. 11, yet in other portions of his argument, the record shows that he vigorously denied that Mrs. Hedge sustained any injury. Under these circumstances, it appears that we are confronted here with a situation somewhat similar to the situation where a witness gives contradictory testimony. In that situation, the general rule is that such testimonial declarations of a party will not be given the effect of a judicial admission, if they merely contradict some other portions of his testimony. Stafford v. Wilkinson, 157 Tex. 483, 304 S.W.2d 364. The obvious reason is that such contradictory statements would not be sufficient to satisfy the requirement that the statement must be unequivocal. Consequently, we think the same rule must be applied here and since the attorney's remarks were contradicted in other portions of his argument, the statements made with reference to Special Issue No. 11 cannot be said to be unequivocal. Moreover, it occurs to us that the statement and remarks of counsel with reference to Special Issue No. 11 were nothing more than an opinion based upon the evidence adduced by

appellants and as such did not amount to a stipulation or a statement of fact. The point is overruled.

By their second point of error, appellants contend that the jury's answer to Special Issue No. 11 is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. In passing on this point, we have been required to review and weigh all of the testimony in the record. Briefly, the evidence shows that at the time of the collision, appellant, Martha Hedge, was twenty-three years of age and was a student at Stephen F. Austin College in Nacogdoches, Texas. Immediately before the collision, she was alone in her Volkswagen automobile and had stopped in obedience to a traffic light on North Street facing in a southerly direction. Appellee, George A. Bryan, Jr., was proceeding in a northerly direction on said North Street and was in the process of crossing through the intersection where Starr Street intersected North Street at right angles. He testified that he was driving between 30 and 40 miles per hour. After he had passed under the light at the Starr Street intersection and was about half way into the intersection, he looked up and saw a car pulling into North Street in front of him from the east on Starr Street. He testified that he started to hit his brakes, but realized that if he did, he would hit the car, a Pontiac, on the driver's door, and therefore he elected to maintain his speed and try to swerve to his left so as to go in front of the Pontiac. In so doing, the left front fender of the Pontiac hit the side of the Ford station wagon which he was driving and the station wagon in turn struck the Volkswagen occupied by Mrs. Hedge. The station wagon struck the Volkswagen in the area of the left front fender, bending the same and causing a blow-out to the left front tire and damaging the left front wheel. However, the Volkswagen apparently was not extensively damaged in view of the fact that Mr. Hedge was able to drive the same home under its own power. Mrs. Hedge testified that after the accident, she was weak and shaking and hurting all over. She admitted, however, that she told Bryan and others at the scene of the collision that she was not hurt insofar as she knew. She testified that when she got home, she found bruises and scratches on her arms and legs and that on the following morning she had pain in her neck, low back and legs. She admitted in her testimony that she had sustained an injury to her back as the result of a fall on a school playground in 1958 and had since suffered with a chronic neck and back discomfort. She admitted that prior to the date of the collision, she had been treated for her previous back injuries by three different chiropractors, Dr. Golden, Dr. Martin and Dr. Dudley. She also admitted that she had received treatment from an osteopathic doctor by the name of Dr. Smith. The record reveals that prior to the collision, Mrs. Hedge had visited Dr. Dudley's office on 37 occasions between January, 1961, and January, 1964. Her last visit to Dr. Dudley was two days prior to the collision in question. On the day following the collision, she testified that she again visited Dr. Dudley's office for treatment to her back and neck and was treated by him until sometime in 1965 when she moved to Palestine, Texas, where she was treated by a chiropractic doctor by the name of Dr. Bourns. She further testified that in 1966 she visited Dr. L. A. Colquitt, an orthopedic surgeon in Longview, Texas, for examination and treatment. Also in 1966, at the request of the appellee, she was examined by Dr. P. M. DeCharles in Tyler, Texas. The record reveals that upon the trial appellants called Dr. Dudley and Dr. Bourns as witnesses in their behalf, while appellee called Drs. Colquitt and DeCharles. Both Dr. Dudley and Dr. Bourns testified that in their opinion Mrs. Hedge sustained an injury as a result of the collision, while Dr. Colquitt and Dr. DeCharles testified that they were unable to find any evidence of an injury.

In the landmark case of In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660, we have been instructed that in determining whether or not the verdict is so con-

trary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, we must consider and weigh all of the evidence in the record and set aside the verdict and remand the cause for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. The evidence in support of the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. See In re: King's Estate, supra.

■ This we have attempted to do and as a result, we have arrived at the conclusion that the evidence is such that we cannot conscientiously say that the jury's verdict with respect to the question of injury is against the overwhelming weight and preponderance of the evidence.

By the third point of error, appellants contend that the trial court erred in failing to grant a new trial because of jury misconduct. In this connection, appellants contend that the misconduct was brought about by the suggestion of the foreman to the jury that the jury resolve the deadlock upon the question of damages as inquired about in Special Issue No. 12, by changing their answer to Special Issue No. 11 from a "We do" answer to a "We do not" answer so as to obviate the necessity of answering Special Issue No. 12.

By agreement of the parties, the cause was tried before a jury composed of only 11 jurors. According to the testimony introduced on a motion for new trial, the jury had no difficulty in answering any of the issues until they arrived at Special Issue No. 11. On their first ballot on Special Issue No. 11, the jury voted 9 to 2 for a negative answer, finding that Mrs. Hedge was not injured as a result of the collision. Thereupon an argument ensued with jurors Fields and Posey taking the position that Mrs. Hedge was entitled to some amount of damages and since the damage issue was conditioned upon an affirmative finding of injury, the jury should find that she was injured

so that they could award some amount of damages. After further deliberation, the other nine jurors finally agreed to an affirmative answer to Special Issue No. 11. The jury then began their deliberations upon the question of damages. Juror Fields insisted that appellants should be awarded damages in the amount of $25,000.00, while the other jurors were of the opinion that the damages, if any, should be of a much smaller amount. The jury became hopelessly deadlocked and as a result sent a note to the trial judge advising him that they were unable to arrive at a verdict. The court advised the jury to continue its deliberations. After further deliberation upon Special Issue No. 12, juror Fields made the statement that if Mrs. Hedge was not entitled to $25,000.00 in damages, she was not injured at all. At this point, the foreman suggested that the jury return and reconsider Special Issue No. 11, reminding the jury that under the Court's Charge that they would not be required to answer the damage issue unless they had found that Mrs. Hedge had sustained an injury. The record shows that the jury immediately returned to Special Issue No. 11 and after some discussion unanimously agreed to a "We do not" finding to Special Issue No. 11.

■ The general rule is that a new trial may be granted only for overt acts of misconduct and that the mental processes by which a jury reaches its verdict will not constitute sufficient grounds for a new trial. 41 Tex.Jur.2d, Sec. 32, pages 78–79.

■■ As we view the record, the evidence fails to show any overt act of misconduct, either on the part of the foreman or on the part of any juror. By telling the jury that they did not have to answer Special Issue No. 12 if they answered Special Issue No. 11 "We do not", the foreman told the jury nothing that was not apparent from the charge itself. The mere suggestion that the jury could, if they so desired, reconsider Special Issue No. 11, would not constitute an overt act of misconduct. The jury was authorized to reconsider and change its ver-

dict and its right to do so cannot be questioned so long as the final verdict is supported by the evidence. Menefee v. Gulf, C. & S. F. Ry. Co. (Tex.Civ.App.), 181 S.W.2d 287.

 Appellants argue, however, that the circumstantial evidence is sufficient to show that the verdict was a makeshift affair, invented by the jury for the purpose of avoiding further consideration of the case and shows that the jury merely agreed to the "We do not" answer as a means of disposing of the case. We think the contention is without merit.

In the first place, there is no testimony showing that the jury collectively agreed to change their answer to Special Issue No. 11 solely for the purpose of avoiding the necessity of answering Special Issue No. 12. An essential element of this form of conduct is an agreement among the jurors to achieve a pre-conceived result. The evidence fails to show any such agreement. Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558; W. W. Auto Parts, Inc. v. Hyak (Tex.Civ.App.), 346 S.W.2d 919. Secondly, the question of whether the jury answered Special Issue No. 11 in the negative solely for the purpose of avoiding Special Issue No. 12 or whether they did so because they felt duty-bound to do so under the evidence would involve an inquiry into the mental processes of the jury and would constitute no evidence of this conduct. While we recognize the rule that jury misconduct may be based upon circumstantial evidence, we think the circumstantial evidence is insufficient to show misconduct because it does not exclude the hypothesis that the jury may have changed their answer to Special Issue No. 11 because they felt duty-bound to do so under the evidence. At most, the circumstances raise only a question of fact.

In overruling appellants' motion for new trial, the trial court impliedly held that either (1) the occurrence was not tantamount to misconduct or (2) it was reasonably doubtful that the verdict had been material-ly affected thereby. Such ruling has support in the evidence and is binding upon this court in the absence of a clear showing of abuse of discretion. Curfman v. State (Tex.Civ.App.), 240 S.W.2d 482; State v. Wair, 172 Tex. 69, 351 S.W.2d 878.

Appellee's cross-point challenging the sufficiency of the evidence to sustain the jury's finding that appellee failed to keep a proper lookout is overruled.

The judgment of the trial court is affirmed.