Lisa SALMINE, Appellant,

v.

Dennis KNAGIN, Julie Knagin, and the City of Kodiak, a municipal corporation, Appellees.

No. 5527.

Supreme Court of Alaska.

May 14, 1982.

Robert C. Erwin, Erwin, Smith & Garnett, Anchorage, for appellant.

Olof K. Hellen and Ron Zobel, Hellen & Partnow, Anchorage, for appellees.

Before RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

OPINION

DIMOND, Senior Justice.

According to Lisa Salmine's amended complaint, she fell more than thirty inches [1] from Dennis and Julie Knagins' carport, suffered a broken neck, and ever since has been a quadriplegic paralyzed from the neck down. Salmine sought damages in excess of $4 million from the Knagins and the City of Kodiak.[2]

On November 19, 1979, the Knagins served Salmine with an offer of judgment pursuant to Civil Rule 68, in which they offered to allow entry of judgment against

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11 of the Constitution of Alaska, and Alaska R.Admin.P. 23(a).

1. Lisa Salmine is a minor.

2. Salmine alleged that there was negligence on the part of the Knagins in constructing a guardrail less than 18 inches high on the carport, since the City of Kodiak uniform building code required a 42 inch high guardrail. The City of Kodiak was made a defendant to this action based on the asserted negligence of the city's building inspector for failing to require the Knagins to submit building plans that would have disclosed the inadequate height of the proposed guardrail.

them in the amount of $25,500 plus costs and attorney's fees. Salmine, in substantially the same language as the offer, accepted the offer in a document filed on January 18, 1980. A judgment on Offer and Acceptance was signed by the superior court judge on the same day,[3] again using substantially the same language as that of both the offer and the acceptance.

On July 24, 1980, the action was dismissed pursuant to a stipulation signed by the attorneys for all of the parties.[4] In a document dated July 21, 1980, Salmine's counsel filed a request "that a hearing date be set for the court to determine the amount of coverage [for attorney's fees] under the terms of an Alaska Civil Rule 82 endorsement as set out in the January 18, 1980, judgment [on offer and acceptance]." The request for a hearing was denied by the superior court "as untimely and not in conformance with [the] Rules." An attorney's fee for Salmine in the amount of $2,637.50 was allowed "under [the] terms of [the] Stipulation or Judgment on Offer and Acceptance." Salmine has appealed.

■ The court was mistaken in denying a hearing on the amount of attorney's fees on the ground that the request for such a hearing was untimely. The January 18, 1980, initial judgment on the Civil Rule 68 offer of judgment and acceptance was interlocutory,[5] and thus the point from which the period for making the request should be calculated was July 24, 1980, the date of the order to dismiss the action. The request for hearing was dated July 21, 1980, and although the record reflects that it was not filed with the court until August 1, 1980, this was only eight days after the order to

dismiss was entered. This was a "timely" request for a hearing, and Salmine was entitled to be heard. Civil Rule 79, which provides for furnishing a cost bill within ten days after judgment, is not determinative of the date for a hearing on the assessment of attorney's fees.[6] And Civil Rule 77 is not an obstacle to the hearing on attorney's fees, because the time limits in that rule are with respect to documents in opposition to Salmine's request for a hearing on attorney's fees.

The language of the offer of judgment, of the acceptance by Salmine of the offer of judgment, and of the judgment on offer and acceptance provides first that Salmine recover the sum of $25,500 plus costs. And all three of these documents provide, as to plaintiff's recovery of attorney's fees, the following:

> [That] attorney's fees [be] included as a part of costs in the amount determined by this Court as coming within the terms of coverage to an insured to be paid to a prevailing party under the terms of an Alaska Civil Rule 82 endorsement reading as follows:
>
> > If the named insured has elected to pay the additional premium, this company agrees to pay all attorneys fees taxed against the insured as costs under "Alaska Civil Rule 82".

with the amount of attorneys fees granted by the court as an element of costs not necessarily to be limited to the $25,500.00 offer of judgment amount.[7]

Civil Rule 82 provides in relevant part as follows:

(a) Allowance to Prevailing Party

---

**3.** Since the Knagins' offer was accepted after the ten day limit provided in Civil Rule 68 had expired, it may be contended that the acceptance did not automatically create a contract for judgment. *See Gumear v. Interior Credit Bureau,* 627 P.2d 647 (Alaska 1981). The Knagins' subsequent conduct, however, indicates a waiver of the defect in Salmine's acceptance of their offer. *See Beirne v. Alaska State Hous. Auth.,* 454 P.2d 262, 264–65 (Alaska 1969).

**4.** The stipulation to dismiss, on the basis of which the order of dismissal was entered, stated that Salmine and the City of Kodiak had

agreed to dismiss the action. However, the stipulation was executed not only by counsel for those parties, but by counsel for the Knagins as well.

**5.** *See* Civ.R. 54.

**6.** *State v. Univ. of Alaska,* 624 P.2d 807, 817 (Alaska 1981).

**7.** This language seems to have come from an insurance policy.

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein:

ATTORNEY'S FEES IN AVERAGE CASES

|  | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $ 2,000 | 25% | 20% | 15% |
| Next $ 3,000 | 20% | 15% | 12.5% |
| Next $ 5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court in its discretion in a reasonable amount.

(2) In actions where the money judgment is not an accurate criterion for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

. . . .

(4) Attorney's fees upon entry of judgment by default shall be determined by the clerk. In all other matters the court shall determine attorney's fees. Awards not pursuant to the schedule set forth in subparagraph (1) of this Rule shall be made only upon motion.

■ The court assessed the attorney's fees in favor of Salmine according to the above schedule of Civil Rule 82(a)(1). But it is not at all clear that this action was appropriate. From the size of the offer of judgment, $25,500, and the amount Salmine, a quadriplegic, claimed as damages, i.e., in excess of $4 million, it is fairly obvious that the amount of judgment offered and accepted was the limit of a policy of insurance presumably owned by the Knag-ins. This is also evident from what the parties to the court referred to as "Alaska Civil Rule 82 endorsement", which read as follows:

> If the named insured has elected to pay the additional premium, this company agrees to pay all attorney's fees taxed against the insured as costs under "Alaska Civil Rule 82".

with the amount of attorney's fees granted by the court as an element of costs not necessarily to be limited to the $25,500.00 offer of judgment amount.

When Salmine accepted the offer of judgment, a contract for judgment presumably came into existence. The amount of attorney's fees under Civil Rule 82 is an essential part of that contract. What the parties intended as attorney's fees under the terms of "an Alaska Civil Rule 82 endorsement" is not at all clear.[8] We cannot see here, and we are quite doubtful that the superior court could see that there was a meeting of the minds of the parties on that issue. A contract should be interpreted to give effect to the reasonable expectations of the parties, and on the record we have before us that cannot be done. For the purpose of determining the intent of the parties to a contract, the court must look ·to relevant extrinsic evidence which bears on the intention of the parties, as well as the language of the contract.[9]

It may be, of course, that there is a material misunderstanding here which has prevented the formation of any contract. That would be the case if the parties meant materially different things and neither knew or had reason to know of the others' meaning, or if each knew or had reason to

---

**8.** The parties may have intended that the offer be an offer of policy limits both as to the principal and attorney's fees coverages of the insurance policy. It is difficult, however, to determine the policy limits under the attorney's fees coverage without a trial. Perhaps what the parties intended was that the court would, after a hearing, determine Salmine's damages. Using this figure, the parties could determine what attorney's fees would have been awarded, following trial, had the trial court used the schedule in Civil Rule 82. That amount could well be considered to be policy limits. *See*

*Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 285 nn.5, 6, 291 n.15, 294–95 n.22 (Alaska 1980); *McDonough v. Lee,* 420 P.2d 459 (Alaska 1966). On the other hand the parties might have intended that the court in determining attorney's fees would be guided by the amount of the judgment and by the nature and extent of the legal services provided Salmine.

**9.** *Wright v. Vickaryous,* 598 P.2d 490, 497 (Alaska 1979).

know of the others' meaning.[10] If this should turn out to be the case, the court should simply set aside the judgment and allow the case to proceed to trial on the merits.

Since we are unable to tell what the parties' intentions were, the case must be remanded as to this phase for discovery and trial.

REVERSED and REMANDED.

BURKE, C. J., not participating.

---

10. *See* Restatement (Second) of Contracts § 20 which provides:

Effect of Misunderstanding

(1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and

  (a) neither party knows or has reason to know the meaning attached by the other; or

  (b) each party knows or each party has reason to know the meaning attached by the other.

(2) The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if

  (a) that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party; or

  (b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party.