James C. HAYES and Murilda C.
Hayes, Appellants,

v.

XEROX CORPORATION and Charles
Green, Appellees.

Nos. S–732, 741.

Supreme Court of Alaska.

April 25, 1986.

Stephan H. Williams, Law Offices of Charles E. Cole, Fairbanks, for appellants.

John V. Acosta, Marcus R. Clapp, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellees.

Before BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

James and Murilda Hayes (the Hayeses) appeal a verdict in which the jury awarded

Mr. Hayes $50,000 and Mrs. Hayes $10,000 for injuries sustained from an automobile collision with Charles Green (Green), an employee of Xerox Corporation (Xerox). The Hayeses' appeal raises the following issues: 1) did the superior court err in denying Mr. Hayes' motion for a new trial; 2) did the superior court err in excluding evidence on the issue of punitive damages; 3) did the superior court err in its award to Xerox of costs and attorney's fees; and 4) did the superior court err in compelling the Hayeses to answer certain interrogatories concerning prospective witness testimony. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a two car collision that occurred at the intersection of Fifth Avenue and Cushman Street in Fairbanks. While Green was driving a Xerox leased car north on Cushman toward Fifth Avenue, the Hayeses were driving west on Fifth Avenue. When the Hayeses approached the intersection at Fifth and Cushman the light was green in their favor. As Green approached the intersection the light was red but for some reason Green failed to look for or see the light. Running the red light, Green did not apply his brakes and hit the Hayeses' car. The Hayeses sustained various neck and back injuries as a result of the accident.

The Hayeses sued Xerox and Green for compensatory and punitive damages. Xerox and Green admitted liability for the Hayeses' injuries and that there was no comparative negligence. Xerox subsequently served an offer of judgment on the Hayeses. It offered to settle with Mr. Hayes for $91,500.00 plus costs and attorney's fees and with Mrs. Hayes for $23,500.00 plus costs and attorney's fees. The Hayeses did not accept the offer. The case proceeded to trial solely on the issue of the amount of damages Xerox must pay the Hayeses for their claimed losses. The court decided to exclude evidence on the issue of punitive damages, finding that the facts of the case did not justify such a claim.

After a five-day trial, the jury returned lump sum verdicts in the amount of $50,000 for Mr. Hayes and $10,000 for Mrs. Hayes. The Hayeses thereafter filed a motion for a new trial, which was denied. This appeal followed.

## II. MOTION FOR A NEW TRIAL

Mr. Hayes argues that the superior court erred in denying his motion for a new trial for two reasons: 1) during closing argument, Xerox made judicial admissions regarding elements of the Hayeses' damages; and (2) the evidence at trial did not support the jury's award which was grossly inadequate and unjust.[1]

### A. Did Xerox's Statements in Closing Argument Constitute Judicial Admissions?

Mr. Hayes contends that Xerox's counsel made certain judicial admissions in closing argument about elements of damages and therefore, as a matter of law, Mr. Hayes is entitled to a new trial. Xerox claims that its statements in closing argument constituted equivocal opinion rather than judicial admissions.

A judicial admission, to be binding, must be one of fact and not a conclusion of law or an expression of opinion. 31A C.J.S. *Evidence* § 299 at 765 (1964). Most courts require the statement to be a clear, deliberate, unequivocal statement of fact, not opinion. *Wieder v. Towmotor Corp.*, 568 F.Supp. 1058, 1063 (E.D.Pa.1983) *aff'd* 734 F.2d 9 (3d Cir.1984); *Childs v. Franco*, 563 F.Supp. 290, 292 (E.D.Pa.1983); *Kuzmic v. Kreutzmann*, 100 Wis.2d 48, 301 N.W.2d 266, 268 (App.1980); *Texas Processed Plastics, Inc. v. Gray Enterprises, Inc.*, 592

---

1. Mrs. Hayes does not appeal the superior court's denial of her motion for a new trial. Since Mr. and Mrs. Hayes appeal the rest of the issues, we will refer to both of them as "the Hayeses." We refer to both defendants here as "Xerox."

S.W.2d 412, 416 (Tex.Civ.App.1979); *George M. Eady Co. v. Stevenson*, 550 S.W.2d 473, 473–74 (Ky.1977); *Hedge v. Bryan*, 425 S.W.2d 866, 868 (Tex.Civ.App. 1968).

In his closing argument, Xerox's counsel stated: "Mr. Hayes I think he's been significantly injured. I think he has injury now. I think it may need treatment. We don't know for sure." He conceded that Xerox owed Mr. Hayes a lot of money but didn't know exactly how much since that was the jury's job. He stated that future lost wages were "reasonably certain to be incurred. It's not there, not there." He did not believe there would be any future medical expenses. Counsel then started estimating how much money he felt the jury could award Mr. Hayes on each of his claims. He estimated a total of $69,000— $70,000 which included future medical expenses, loss of consortium, pain and suffering, and lost wages. Mr. Hayes argues that the above statements are judicial admissions in which counsel conceded liability for specific amounts of special damages claimed by Mr. Hayes.

Since there is no law in Alaska on this issue, we must look for guidance from other courts. The Wisconsin Court of Appeals has held that statements made in the context of closing arguments are not judicial admissions.

> The majority of jurisdictions addressing the issue have determined that the opinions and conclusions of counsel in closing arguments do not amount to a binding judicial admission.... Closing arguments are matters of opinions. As stated in *Sabo v. T.W. Moore Feed & Grain*

*Company*, 97 Ill.App.2d 7, 20, 239 N.E.2d 459, 465 (1968), quoting with approval *Rosbottom v. Hensley*, 61 Ill. App.2d 198, 215, 209 N.E.2d 655, 662 (1965):

> "... In the dictionary denotation, a judicial admission is a formal act of the party or his attorney in court, dispensing with proof of a fact claimed to be true and is used as a substitute for legal evidence at the trial. Black's Law Dictionary, 1944."

> We conclude that closing arguments of counsel are opinions only and cannot be construed as an admission of plaintiff's negligence.

*Kuzmic*, 301 N.W.2d at 268 (footnotes omitted).

Reading counsel's closing argument, we conclude that it constitutes opinion, or at best equivocal estimates, rather than clear statements of fact. Xerox conceded the fact that Mr. Hayes was injured by the accident but this issue was never in dispute.[2] The dispute focused on the extent of the injuries and the amount of damages to be awarded for them. Counsel couched his statements in the form of opinion. He phrased everything with "I think," and stated that he didn't know the exact amount to be awarded and did not believe Mr. Hayes would have future medical expenses and then threw out an estimate of $70,000. His estimates were just estimates and not clear, deliberate and unequivocal statements of fact.

The fact that counsel may have conceded some damages is not inconsistent with his theory of the case, since Xerox was disputing the extent or amount of each claim.

**2.** Although Mr. Hayes relies on *Childs v. Franco*, 563 F.Supp. 290 (E.D.Pa.1983), it is distinguishable. In *Childs*, defendant's counsel initially argued that plaintiff may not have sustained any injury and if she did, then the question was the severity of the injury. In closing argument, counsel admitted that plaintiff suffered injuries from the accident but these injuries were minimal. The court held that counsel's statement was a judicial admission as to the existence of some pain/injury from the accident and he was asking the jury to make a reasonable assessment of them. *Id.* at 292.

Unlike *Childs*, here Xerox never denied the existence of Mr. Hayes' injury but disputed its severity and the amount to be awarded for such injury. Xerox did not change its argument in closing as did the counsel in *Childs*.

Mr. Hayes also cites *Choiniere v. Sulikowski*, 126 Vt. 274, 229 A.2d 305 (1967), in which defense counsel had initially contested the issue of negligence but then conceded it in closing argument. *Id.* at 307. This case is not helpful since Xerox's counsel did not concede any issues which he initially contested.

*See Wieder,* 568 F.Supp. at 1063–64 (although counsel conceded that a third party caused the accident, this was not a judicial admission inconsistent with the theory of their case that a third party was the *sole* cause of the accident, relieving co-defendants of liability.)[3]

█ We conclude that Xerox's statements during closing argument constituted opinion and not the clear, deliberate, and unequivocal statements of fact necessary for a judicial admission.

### B. Did the Evidence at Trial Support the Jury's Award to Mr. Hayes?

Mr. Hayes also contends that the trial court erred in denying his motion for a new trial because the evidence does not support the damages awarded by the jury. Mr. Hayes claims that it was improper for the jury not to award him damages for his pain and suffering, loss of earning capacity and loss of enjoyment of life and consortium.

Xerox argues that the evidence at trial does support the award. Xerox concedes that Mr. Hayes suffered injuries but argues that he exaggerated the severity of these injuries.

█ The decision to grant or deny a new trial is within the trial court's discretion. *Bailey v. Lenord,* 625 P.2d 849, 856 (Alaska 1981), *quoting Ahlstrom v. Cummings,* 388 P.2d 261, 262 (Alaska 1964). If there is an evidentiary basis for the jury's decision, the denial of a new trial must be affirmed. *Bailey,* 625 P.2d at 856. However, if the evidence supporting the verdict was completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust, then we must reverse the denial of a motion for a new trial. *Id.; Mullen v. Christiansen,* 642 P.2d 1345, 1348 (Alaska 1982), *citing Sloan v. Atlantic Richfield Co.,* 541 P.2d 717, 724 (Alaska 1975). In reviewing such denials, we must view the evidence in the light most favorable to the non-moving party. *Bailey,* 625 P.2d at 856, *citing City of Palmer v. Anderson,* 603 P.2d 495, 501 (Alaska 1979).

█ We have reviewed the record and conclude that there was an evidentiary basis for the jury's verdict and that it was not plainly unreasonable and unjust.

The evidence at trial established that Mr. Hayes suffered a back and neck injury from the accident. The question was the amount of Mr. Hayes' pain and suffering.

Doctors Vrablick, Martino and Gollogly all testified that Mr. Hayes suffered nerve root damage at the S–1, C–9, C–8 and T–1 level affecting his neck, back and left arm. Doctors Martino and Gollogly stressed that these problems were not very severe.

Xerox challenged Mr. Hayes' evidence as to the severity of his injuries by showing that he spent some of his sick leave from the accident in Los Angeles at Disneyland and in Anchorage at church functions.

In addition, Mr. Hayes' supervisor at the attorney general's office testified that Mr. Hayes' injuries did not interfere with his work even though the workload had increased from 386 to 680 complaints in three years without a similar increase in staff to help Mr. Hayes.

There was lay testimony that Mr. Hayes had trouble moving, getting in and out of his car and that he limped a lot. It is the trial court's function to judge the credibility of the witnesses and to weigh conflicting evidence. The jurors were thus entitled to decide the weight given to the evidence. *Penn v. Ivey,* 615 P.2d 1, 2 (Alaska 1980) (citations omitted).

█ Mr. Hayes also claims that the jury failed to award damages for loss of consortium and of enjoyment of life. Xerox presented evidence that showed that Mrs. Hayes' injuries were not very severe.

---

**3.** If any statement in counsel's closing argument contradicted his prior statements, it is still not a judicial admission. Contradictory statements do not meet the "unequivocal" requirement. *See Hedge v. Bryan,* 425 S.W.2d at 868–69 (counsel's statements in closing argument contradicted his earlier statements and were held not to meet the "unequivocal" requirement but amounted to opinion based upon the evidence adduced by appellants.)

Mrs. Hayes also spent some of her sick leave time at Disneyland and in San Francisco. Mrs. Hayes was in another accident some months after the first one but testified that she was not injured by this latter accident. The jury could have believed that Mrs. Hayes' injuries did not seriously affect the Hayeses' marital relationship. Much of the evidence Xerox presented attacked the credibility of the Hayeses' testimony. The jury could disbelieve the Hayeses' claims as to the severity of their injuries. The jury could believe that (1) Mr. Hayes exaggerated the extent of his injuries and pain and suffering, (2) exaggerated his future loss of earning capacity, and (3) took off more time than necessary to recover. *See Jackson v. White,* 556 P.2d 530, 532 n. 4 (Alaska 1976) (credibility choices are for trier of facts to make).

Viewing the evidence in a light most favorable to Xerox, we conclude that the trial court did not abuse its discretion in denying Mr. Hayes' motion for a new trial.

## III. WAS THE SUPERIOR COURT CORRECT IN PREVENTING THE HAYESES FROM PRESENTING THEIR PUNITIVE DAMAGES CLAIM TO THE JURY?

Xerox initially moved for partial summary judgment on the punitive damages claim, arguing that the facts of the case did not merit such a claim. Judge Van Hoomissen, who was then presiding over the case, denied the motion.

Judge Blair was eventually assigned to the case because his calendar cleared and Judge Van Hoomissen was ill. At the beginning of trial, Judge Blair ruled that the evidence contained in the parties' motions for and against partial summary judgment would not support a jury finding of Green's liability for punitive damages. Judge Blair then precluded the Hayeses from presenting evidence relevant to punitive damages. Judge Blair reversed Judge Van Hoomissen's prior ruling, thereby granting Xerox's partial summary judgment motion on the punitive damages claim.

The Hayeses challenge the superior court's decision on two grounds: 1) the Hayeses contend that Judge Van Hoomissen's denial of Xerox's motion for partial summary judgment was the "law of the case" on the issue of punitive damages; 2) alternatively, the Hayeses argue that if Judge Blair did not err in ignoring Judge Van Hoomissen's prior ruling, then his subsequent ruling which precluded evidence of the punitive damages claim was incorrect.

■ *Stepanov v. Gavrilovich,* 594 P.2d 30 (Alaska 1979) is dispositive of the Hayeses' first argument. In *Stepanov,* Judge Moody who was initially assigned to the case became ill. Judge Ripley was assigned to the case and reversed Judge Moody's earlier ruling denying a summary judgment. 594 P.2d at 32. Addressing the doctrine of law of the case, this court held that it is entirely reasonable for a judge whose responsibility it is to try a case to reconsider and reverse an earlier ruling if convinced that the ruling was erroneous. *Id.* at 36. We conclude that the doctrine of law of the case is inapplicable.

In support of their second argument, the Hayeses maintain that Green's conduct might have been recklessly indifferent to the Hayeses' rights and therefore they should have been permitted to present their punitive damages claim to the jury. Xerox argues that Green's conduct was merely negligent and not the sort of reckless indifference necessary to justify a claim for punitive damages.

This court has stated that in order to recover punitive damages "the plaintiff must prove that the wrongdoer's conduct was 'outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another.' Actual malice need not be proved." *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 46 (Alaska 1979) *modified* 615 P.2d 621 (Alaska 1980), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), *overruled on other grounds, Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985), *quoting* Restatement (Second) of Torts § 908 (Tent.Draft No. 19, 1973). Conscious action in " 'delib-

erate disregard of [others] ... may provide the necessary state of mind to justify punitive damages.'" *Id.* If the evidence does not give rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, then the trial court need not submit the issue of punitive damages to the jury. *Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d 767, 774 (Alaska 1982) (citations omitted).[4]

The question here is whether Green's conduct amounted to a "reckless indifference" to the interests of the Hayeses.

We are persuaded by the comments to the Restatement (Second) of Torts § 500, which, define reckless disregard of safety.[5]

> Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others. It is reckless for a driver of an automobile *intentionally* to cross a through highway in defiance of a stop sign if a stream of vehicles *is seen* to be closely approaching in both directions, but if his failure to stop is due to the fact that he has *permitted his attention to be diverted so that he does not know that he is approaching the crossing, he may be merely negligent and not reckless.*

Restatement (Second) of Torts § 500 comment (b) (1964) (emphasis added).

Reckless misconduct differs from negligence which consists of mere "inadvertence, incompetence, unskillfulness" because reckless misconduct requires a conscious choice of a course of action. *Id.* comment (g).

The Hayeses argue that Green was familiar with the streets and traffic signals in Fairbanks, that he failed to look for traffic as he approached the intersection, failed to apply his brakes before the impact and failed to look for the traffic signal due to a lapse of concentration. Green was aware of all the facts which would lead a reasonable person to realize the risk his conduct posed to others. The Hayeses claim that these facts presented a jury question as to whether Green's conduct was recklessly indifferent.

The Hayeses stated that Green didn't try to stop because he "didn't see the light at all." Green's affidavit in support of Xerox's motion for partial summary judgment states that he did not operate his car with the intention of exposing others to risk of harm or with indifference to the safety of others and that he had not consumed alcohol or drugs. Although Green estimated that he was driving at about 20–25 miles per hour at the time, Mrs. Hayes stated that he was driving at an excessive speed. The street condition was hard packed snow and slippery.

The parties cite various cases which have addressed the issue of punitive damages in automobile collision cases. A few courts have allowed punitive damages in cases involving conduct similar to that of Green. In *Dame v. Estes,* 233 Miss. 315, 101 So.2d 644, 645 (1958), defendant ignored or failed to see the stop sign staring her in the face, made no effort to stop at the intersection or even check her speed and failed to see plaintiff's truck until right in front of her. The court held that the question of whether plaintiff is entitled to punitive damages should have been submitted to the jury. *Id. See also Knoblock v. Morris,* 169 Kan. 540, 220 P.2d 171 (1950).[6]

---

**4.** Although this case does not involve actual malice, this same principle should apply where there is no inference of outrageous conduct equivalent to reckless indifference.

**5.** Restatement (Second) of Torts § 500 (1964) provides:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his

duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

**6.** The Hayeses use the fact that Green's conduct violated a traffic law (failure to observe a traffic signal) as evidence of recklessness. A violation

There are also a few courts which have not allowed punitive damages because defendant's conduct was negligent. *Baker v. Marcus*, 201 Va. 905, 114 S.E.2d 617, 621–22 (1960) (defendant's conduct in taking her eyes off the road and failing to see plaintiff's car constituted negligence and lack of ordinary care and caution, therefore question of punitive damages should not have been submitted to jury).

In reviewing a grant of summary judgment, this court will reverse only if the evidence in the record, taken in a light most favorable to the non-moving party, poses genuine issues of material fact. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1284 (Alaska 1985) (citations omitted).

A material issue of fact exists where reasonable jurors could disagree in the resolution of factual issues presented by the moving papers. *Green v. Northern Publishing Co.*, 655 P.2d 736, 742–43 (Alaska 1982) *cert. denied*, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983).

■ After reviewing the evidence, in a light most favorable to the Hayeses, we conclude that reasonable jurors could not disagree that Green's conduct constituted simple negligence and not reckless indifference to the interests of others. The evidence did not present genuine issues of material fact nor give rise to an inference of conduct amounting to reckless indifference to the rights of others. Green's conduct was not outrageous, it was merely negligent. Therefore, the superior court properly granted Xerox's partial motion for summary judgment on the Hayeses' punitive damages claim.

## IV. DID THE SUPERIOR COURT ERR IN ITS AWARD OF ATTORNEY'S FEES AND COSTS?

Pursuant to Alaska Civil Rule 68, the superior court awarded Xerox attorney's fees and costs. Alaska Civil Rule 68 provides in pertinent part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer....

The Hayeses attack the superior court's award of attorney's fees to Xerox on two grounds: First, the Hayeses claim that Xerox's offer of judgment was invalid because it was a joint offer and was indefinite as to the amount of fees. Second, the Hayeses argue that the award was unjust and an abuse of discretion.

### A. Was Xerox's Offer of Judgment Invalid?

■ The Hayeses rely upon this court's rule that joint offers of settlement are generally excluded from the penal cost provisions of Civil Rule 68. *Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 943 (Alaska 1983). Xerox argues that its offer of judgment was severable and not conditional upon both plaintiffs' acceptance.

Xerox's offer of judgment provides:

Pursuant to Civil Rule 68, Defendants offer to allow entry of judgment against them for each individual Plaintiff as follows:

1. James C. Hayes in the amount of Ninety-one Thousand Five Hundred and 00/100 ($91,500.00) Dollars, plus costs and attorney's fees.

2. Murilda C. Hayes in the amount of Twenty-three Thousand Five Hundred and 00/100 ($23,500.00) Dollars, plus costs and attorney's fees.

The above offers are each made as additional money offers over and above monies already paid by Defendants, which are intended by this offer to act as

of a statute does not of itself make the conduct recklessly indifferent to the safety of others.

Restatement (Second) of Torts § 500 comment (e) (1964).

a setoff against any ultimate verdict which might be rendered in this case in the present amounts of $959.95 to James C. Hayes and $4,631.21 to Murilda C. Hayes. These amounts will not act as setoffs to this offer if accepted, but only as additional damage items which should be added to the total for the purpose of determining the Rule 68 affect of this offer if a jury verdict is rendered.

The superior court held that this was not a joint offer because "[a]ny one reading the offer of judgment can easily determine the amount that is being offered to James C. Hayes and the amount which is being offered to Murilda C. Hayes. Plaintiffs could easily have accepted one offer and gone to trial on the other case."

Because an offer of a lump sum presents problems of apportionment between offerees, it is treated as a joint offer and excluded from the penal cost provisions of Rule 68. *Brinkerhoff,* 663 P.2d at 943; *Randles v. Lowry,* 4 Cal.App.3d 68, 84 Cal.Rptr. 321, 325 (1970) (court held lump sum offer of judgment to three plaintiffs invalid since offer did not designate how it should be divided between plaintiffs, making it impossible to say any one plaintiff received a less favorable result than he would have under the offer). The offer in this case clearly does not present apportionment problems.

An offer will also be considered joint if it requires both plaintiffs to accept it. In *Hutchins v. Waters,* 51 Cal.App.3d 69, 123 Cal.Rptr. 819, 822 (1975), the problem of apportionment was solved but the court held that an offer containing an express proviso that it had to be accepted by both plaintiffs was a conditional offer which would not trigger the penal cost provision of the California rule. The California Court of Appeal stated that the language of the statute did not contemplate a "conditional settlement offer" requiring joint acceptance. *Hutchins,* 123 Cal.Rptr. at 821. In addition, one plaintiff might think his or her offer is fair while the other may not and it would not only be unfair to require joint acceptance but also would frustrate the chances of settlement which is the purpose behind Civil Rule 68. The Hayeses argue that Xerox's offer of judgment required the Hayeses' joint acceptance and therefore under the *Hutchins* principle it is invalid.

The Hayeses claim that they and their attorney understood the offer to require joint acceptance. Relying upon basic principles of contract law, the Hayeses contend that the understanding of the parties to the settlement agreement is probative of the meaning of an offer of judgment.

This court has stated that an "offer of judgment and acceptance thereof is a contract." *Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973). While a party's understanding of a contract is probative we have also held that "interpretation of words in a contract is a matter for the court." *Rules v. Sturn,* 661 P.2d 615, 617 n. 3 (Alaska 1983) *citing Tsakres v. Owens,* 561 P.2d 1218, 1222 (Alaska 1977).

In order to give legal effect to the parties' reasonable expectations, the court examines the written agreement itself and also extrinsic evidence regarding the parties' intent at time the contract was made. *Norton v. Herron,* 677 P.2d 877, 880 (Alaska 1984) (citations omitted). Examining the words of the offer and the extrinsic evidence of the parties' intent, we conclude that Xerox did not make a joint offer of judgment.

Unlike the offer in *Hutchins,* here the offer does not contain a proviso mandating joint acceptance. On its face, the offer is consistent with Judge Blair's construction permitting one plaintiff to accept and the other to go to trial.

Moreover, the extrinsic evidence also suggests that the offer was severable. Xerox sent a letter with the offer of judgment that stated:

We have enclosed offers of judgment to your clients which, if the attorneys' fees are computed pursuant to Civil Rule 82 as a case "without trial" the total offer intended for James C. Hayes is $99,000, and for Murilda C. Hayes is $26,000. We

are willing to settle for either those round figures, or if you wish to accept the offers of judgment formally, then of course you must proceed to apply for attorneys' fees to the Court.

The language "enclosed offers of judgment" and "we are willing to settle for either those round figures" shows that the offer was not conditional upon joint acceptance.

The Hayeses also argue that the offer of judgment is invalid because it was not sufficiently definite with respect to the amount or calculation of attorney's fees offered. In *Davis v. Chism*, 513 P.2d 475, this court noted that the determination of proper attorney's fees may require a certain amount of fact finding but normally these fees would be computed under the Civil Rule 82 schedules. *Id.* at 482 n. 6. In *Rules v. Sturn*, 661 P.2d 615, we read an offer of judgment with a provision for attorney's fees stating, "and an attorney's fee based upon Civil Rule 82," as specifying a definite sum plus Civil Rule 82 attorney fees. *Id.* at 617.

The offer itself and Xerox's letter indicate that attorney's fees could be calculated by using Civil Rule 82 or by having the court determine the fees after a "certain amount of fact finding." *Davis*, 513 P.2d at 482 n. 6.[7]

 We conclude that Xerox's offer of judgment was not invalid as a joint offer or as indefinite with respect to an amount of attorney's fees.

**B. Did the Superior Court Abuse its Discretion in its Award of Attorney's Fees to Xerox?**

The Hayeses contend that the superior court erred in its award of attorney's fees in two respects: First, the amount is unjust, excessive and the court did not explain its reasons for arriving at the amount finally awarded; second, Xerox's fee request did not detail the amount of time devoted to specific tasks.

Alaska Civil Rule 68 controls the determination of attorney's fees and costs in this case. *See supra* for text of Rule 68. When the judgment recovered is less than an offer of judgment made under Rule 68, then the offeree must pay partial attorney's fees incurred subsequent to the offer. *See Truckweld Equipment Co. v. Swenson Trucking*, 649 P.2d 234, 240 (Alaska 1982); *Miklautsch v. Dominick*, 452 P.2d 438, 440–41 (Alaska 1969). The cost provision of Rule 68 confers a "limited prevailing party" status on a defendant. *Scott v. Robertson*, 583 P.2d 188, 194 (Alaska 1978). This court has held that a court can not award actual fees but may award some fees as partial compensation. *Jakoski v. Holland*, 520 P.2d 569, 578–79 (Alaska 1974). In reviewing an award of attorney's fees under Rule 68, we must ask whether the award was "manifestly unreasonable." *Scott*, 583 P.2d at 194–95.

This court has held that a trial court should state its reasons when it makes an award of attorney's fees which varies from the schedule in Rule 82(a)(1).[8] *Farnsworth v. Steiner*, 601 P.2d 266, 272 (Alaska 1979).

---

**7.** The Hayeses' reliance on *Salmine v. Knagin*, 645 P.2d 148 (Alaska 1982) is inappropriate. In *Salmine*, the offer of judgment was limited to the defendant's insurance policy. Defendant, however, promised on an endorsement to pay attorney's fees under Civil Rule 82. It was unclear from the terms of the policy whether the attorney's fees were included in the policy limits or were to be paid in addition to the limit. *Id.* at 150. This sort of ambiguity is not present here.

**8.** Alaska R.Civ.P. 82(a)(1) provides:
 (a) Allowance to Prevailing Party.
 (1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein:

In the present case, Judge Blair stated that he awarded defendants $25,000 attorney's fees in order to "partially compensate" them. Although he applied the correct standard of partial compensation in determining the fees, he did not state his reasons for awarding $25,000. We must know the court's reasons for awarding a specific amount to determine whether it is manifestly unreasonable.

In addition, the court should have required Xerox to itemize its fee request. In *Moses v. McGarvey*, 614 P.2d 1363, 1374 n. 32 (Alaska 1980), we stated that when counsel requests attorney's fees, other than based on the schedule in Rule 82(a)(1), accurate records of the hours expended and a brief description of the services reflected by those hours should be submitted. Under *Moses*, Xerox's counsel should have specified the services included in those hours submitted. Therefore, we remand this issue so that the superior court can order Xerox's counsel to itemize the hours and nature of the work spent on this case then award partial attorney's fees accompanied by an explanation of its reasons for choosing its final award.

### C. Did the Superior Court Err in its Award of Costs to Xerox?

Under Alaska Civil Rule 68, an offeree who receives a judgment less than an offer of judgment "must pay the costs incurred after the making of the offer." Alaska R.Civ.P. 68. This court has stated that Rule 68 "explicitly awards *actual* costs in [these] circumstances," although it does not award actual attorney's fees. *Truckweld Equipment Co.*, 649 P.2d at 240.

Xerox requested and was awarded $13,-752.57 in costs. The Hayeses challenge this award of costs on various grounds and rely on Civil Rule 79(b) (items allowed as costs) and Administrative Rule 7(c) (costs permitted for expert witnesses).[9] Xerox indicates that it applied for an award of costs under Civil Rule 68, not 79(b).

The question presented is whether costs under Civil Rule 68 means costs as allowed under Civil Rule 79 and Administrative Rule 7. We read the cost provision in Rule 68 to mean those costs permitted by the relevant Alaska rules.

The Federal courts presented with the similar issue have construed the cost provision in Federal Rule of Civil Procedure 68 as meaning permissible costs under Federal Rule of Civil Procedure 54. *Greenwood v. Stevenson*, 88 F.R.D. 225, 232 (D.C.R.I. 1980) ("this court does not see how it can seriously be contended that the term 'costs' in [68] means something radically different from the word 'costs' in Rule 54"); *Waters v. Heublein, Inc.*, 485 F.Supp. 110, 117 (N.D.Cal.1979) (Rule 68 does not alter the definition of costs. The court stands on the relevant authority setting forth these definitions).

ATTORNEY'S FEES IN AVERAGE CASES

| | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $ 2,000 | 25% | 20% | 15% |
| Next $ 3,000 | 20% | 15% | 12.5% |
| Next $ 5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court in its discretion in a reasonable amount.

9. Alaska R.Civ.P. 79(b) provides:
 (b) Items Allowed as Costs. A party entitled to costs may be allowed premiums paid on the expenses of posting, undertakings, bonds or security stipulations, where the same have been furnished by reason of express requirement of law or on order of the court; the necessary expense of taking depositions for use at trial and producing exhibits; and the expense of service and publication of summons or notices, and postage when the same are served by mail; filing fees and other charges made by the clerk of the court and fees for transcripts required in the trial of a case in the superior court. In addition to the items allowed as costs by law and in these rules, a party shall be allowed any other expenses necessarily incurred in order to enable a party to secure some right accorded him in the action or proceeding.

■ Similarly, the state courts interpret their state Rule 68 costs as synonymous with costs permitted by the relevant state rules. *Divine v. Groshong*, 235 Kan. 127, 679 P.2d 700, 711 (1984) (cost recovery by successful offeror limited to those items enumerated in relevant state law on taxation of costs); *Jordan v. Berkey*, 26 Wash. App. 242, 611 P.2d 1382, 1385 (1980) (cost recovery by successful offeror limited to those costs prescribed in relevant Washington law); *Person v. Fletcher*, 582 S.W.2d 765, (Tenn.App.1979) (cost recovery by prevailing offeror limited to taxable costs permitted by state law even though Rule 68 allows recovery of "all costs" incurred after making of offer). We see no reason to read the term "costs" differently under our Rule 68 and the rules governing the taxing of costs such as Civil Rule 79 and Administrative Rule 7.

■ The Hayeses object to many items of costs such as duplicative deposition witness fees and travel expenses for defendant Green to attend trial. The reason for some of these duplicative costs is that the court granted the Hayeses' motion to quash certain depositions and then had to continue trial to permit these depositions to be taken. The continuance also required Xerox to pay Green's travel expenses again. An award of costs is within the superior court's discretion and will be affirmed absent a clear abuse of discretion. *Kaps Transport, Inc. v. Henry*, 572 P.2d 72, 77 (Alaska 1977) (citations omitted). The superior court did not abuse its discretion in its award of these costs.

The Hayeses also contend that the court erred in its award of costs for expert witnesses. Administrative Rule 7(c) controls the taxing of costs for expert witnesses.

Alaska Rule of Administrative Procedure 7(c) provides:

(c) Expert Witnesses. A witness called to testify as an expert shall receive additional compensation to be fixed by the judge with reference to the value of the time employed and the degree of learning or skill required; but such additional compensation shall not exceed $25.00 per hour while so employed and testifying, except as otherwise provided in these rules. No more than three expert witnesses shall be allowed to testify on each side as to the same issue in any given case, unless the judge trying the case, in his discretion, permits an additional number of witnesses to testify as experts.

■ The Hayeses claim that the superior court could not determine the reasonableness of the fees requested or whether they exceeded the maximum $25.00 per hour since Xerox did not specify the number of hours spent testifying. It is impossible to determine on review whether or not the requirements of Rule 7(c) are met since no hourly breakdown was provided by Xerox. *See Truckweld Equipment Co.*, 649 P.2d at 241. A time sheet is required. *Id.* Therefore, we remand this item of costs for the superior court judge to redetermine according to Rule 7(c).

The Hayeses also challenge the court's award of investigative service fees because Xerox did not describe these services. We conclude that the award of these fees was an abuse of discretion since they were insufficiently detailed. *Truckweld Equipment Co.*, 649 P.2d at 241.

The Hayeses also contend that the court erred in awarding costs for photocopies of cases during law library research. We find that the award of photocopying costs was within the court's discretion under Civil Rule 79.

## V. DID THE SUPERIOR COURT ERR IN COMPELLING THE HAYESES TO ANSWER INTERROGATORIES CONCERNING PROSPECTIVE WITNESS TESTIMONY?

Xerox served the Hayeses with the following interrogatories:

For each of the individuals listed below, please supply the following information:

a. Your relationship, if any, to the witness;

b. The length of time you have known the witness and where you became acquainted;

c. Whether the witness will testify to liability, damages, or both;

d. A detailed summary of the testimony to be given by the witness;

e. A summary of the facts upon which the witness relies for his or her testimony; and

f. If any witness's testimony will be supplemented in any way by documents and exhibits, please attach a copy of each item to your answer to these interrogatories.

The Hayeses objected to these interrogatories, claiming that they sought information protected under the work-product rule. The superior court issued an order compelling the Hayeses to answer these interrogatories.

Although we believe the superior court erred in compelling answers to these interrogatories, it is harmless error under Alaska Civil Rule 61.[10] However, we will address this issue to clarify Alaskan law on the work-product doctrine.

Under Alaska Civil Rule 33(b), interrogatories may relate to any matter which can be inquired into under Alaska Civil Rule 26(b). Alaska Civil Rule 26(b) permits parties to obtain discovery of any unprivileged matter which is relevant to the subject matter involved in the action. In ordering discovery, the court "shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney...." Alaska R.Civ.P. 26(b)(3).

Although this court has held that discovery rules are to be liberally construed, *Van Alen v. Anchorage Ski Club, Inc.*, 536 P.2d 784, 787 (Alaska 1975), it has also protected certain subject matter under the work-product doctrine. *McKibben v. Mohawk Oil Co., Ltd.*, 667 P.2d 1223, 1231 (Alaska 1983).

An interrogatory otherwise proper is not necessarily objectionable merely because an answer involves an opinion or contention that relates to fact or the application of law to fact. Alaska R.Civ.P. 33(b). In *McKibben*, this court held that an interrogatory which required a defendant to provide factual information supporting each affirmative defense did not seek privileged information since any opinions and conclusions required were factually oriented. 667 P.2d at 1232.

An interrogatory, however, cannot require an attorney to "state what evidence will be relevant, his conception of the law as applied to the particular facts, indicate on what legal principles he will rely, or reveal his conception of the strong and weak points of his case." *McKibben*, 667 P.2d at 1231, *citing* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2167, at 497–98 (1970).

Relying on *McKibben*, Xerox argues that its interrogatories requested factual information and required opinion, if any, that was factually oriented.

The Hayeses rely upon *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and *City of Long Beach v. Superior Court*, 64 Cal.App.3d 65, 134 Cal.Rptr. 468 (1976).

In *Hickman*, the United States Supreme Court suggested that a witness' oral statements to an attorney, whether presently in the form of an attorney's mental impressions or in memoranda, could only be produced under very rare circumstances. 329 U.S. at 512, 67 S.Ct. at 394, 91 L.Ed. at 463.[11] The Court stated:

---

**10.** Alaska R.Civ.P. 61 provides:

No error in either the admission or the exclusion of evidence and *no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties* is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the

court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. (Emphasis added).

**11.** In *Hickman*, the interrogatory required the attorney to set forth in detail the exact provisions of witnesses' oral statements or reports.

Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account of his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

329 U.S. at 512–13, 67 S.Ct. at 394–95, 91 L.Ed. at 463.

In his concurrence, Justice Jackson stated that the practice of requiring a "lawyer to write out and deliver to his adversary an account of what witnesses have told him" demoralizes the Bar. The produced statement is in the attorney's language permeated with his inferences. 329 U.S. at 516–17, 67 S.Ct. at 396–97, 91 L.Ed. at 465 (Jackson, J. concurring).

We agree with the language in *Hickman* and believe that the interrogatories in the present case requested the Hayeses' counsel to disclose opinions and conclusions based upon his mental processes rather than opinions that were factually oriented.

We are also persuaded by the reasoning of the California Court of Appeal, which has held that an interrogatory calling for an attorney to describe a witness' testimony violated the work-product rule. The court stated that in answering such interrogatories, the attorney must give his conclusions as to what a witness would say.

[I]f an analysis of each witness' testimony had already been prepared by petitioner's attorney, it would have been absolutely privileged. The fact that under the court's order such analysis must be prepared specifically for submission to plaintiff does not justify a contrary result. The same attorney function is involved in both instances, and the writings in each case must necessarily reflect the attorney's impressions, conclusions and opinions.

*City of Long Beach*, 134 Cal.Rptr. at 478.[12]

It is clear that if the interrogatory requests facts supporting a claim, it does not violate the work-product rule. *McKibben*, 667 P.2d 1231–32. Likewise, an interrogatory that requests written statements made by witnesses to a collision does not violate the rule. *Miller v. Harpster*, 392 P.2d 21, 22–23 (Alaska 1964).[13] However, an interrogatory which requests an attorney to provide a detailed summary of a witness' testimony does violate the rule. This interrogatory essentially requires the attorney to set forth what information he will choose to elicit during trial, which means the attorney must reveal his mental impressions, strategy, opinion and what evidence he considers significant. In answering these interrogatories, the attorney filters the witness' statements through his mental impressions, filtering out the weak points of his case. We hold that these interrogatories violated the work-product rule because they requested the Hayeses' attorney to reveal his mental impressions.[14]

12. California, as Xerox indicates, may narrowly construe its discovery rules. The California courts grant a qualified work-product privilege to a party's list of witnesses intended to be called at trial. Even if California may not read its discovery rules as liberally as Alaska, we are still persuaded by the California court's holding that an attorney's description of witnesses' testimony constitutes the attorney's mental impressions and opinions.

13. This court in *Miller* hinted that it approved of the *Hickman* rule. We distinguished the facts in *Miller* from *Hickman* stating "petitioner has not

been requested to reduce oral statements of witnesses to writing." 392 P.2d at 23.

14. This opinion addresses requests for nonexpert witness testimony. Alaska R.Civ.P. 26(b)(4)(A)(i) permits interrogatories requiring a party to "state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." This rule creates an exception to the general rule that interrogatories requesting anticipated nonexpert wit-

In the present case, the superior court's order compelling answers to these interrogatories constitutes harmless error. Under Alaska Civil Rule 61, the Hayeses must show prejudice. *McCracken v. Davis*, 560 P.2d 771, 774 (Alaska 1977) (harmless error interpreted as requiring appellant to show not only error but also substantial prejudice). It is difficult at this stage of the litigation to show that the party has been prejudiced by the order or that the question is not moot. The discovery rules vest broad discretion in the trial court which will generally bar reversal except under very unusual circumstances. 8 C. Wright, A. Miller, Federal Practice and Procedure § 2006, at 34–35 (1970). A new trial would not remedy the error here since Xerox already knows and would know the privileged information. A reversal is less likely when the order grants discovery since there is no effective means of correcting such an error once discovery has been had. *Id.* at 35–36.

We conclude that requiring an attorney to give a detailed summary of his nonexpert witnesses' testimony violates the work-product rule. In this case, a new trial is not warranted because there has been an insufficient showing of prejudice to a substantial right and a new trial would not be an effective means of remedying the error.

The decision of the superior court is AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, C.J., not participating.

ness testimony violate the work-product privilege.

This opinion does not address, at this time, whether interrogatories which seek disclosure of witnesses' anticipated testimony violate the absolute or qualified work-product privilege.