C STREET FOODLAND, an Alaskan Corporation and Lewis R. Shell, Appellants,

v.

The ESTATE of John A. RENNER, Appellee.

No. 4095.

Supreme Court of Alaska.

June 29, 1979.

A. Lee Petersen, Anchorage, for appellants.

Albert Maffei, Anchorage, for appellee.

1. Lewis Shell died in 1961.

2. One of Lewis Shell's children, Lewis R. Shell, also appears as personal representative of Emma Shell, the senior Lewis' wife, who died in 1975.

OPINION

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

PER CURIAM.

This case involves the doctrine of equitable adoption, which we recognized in *Calista Corporation v. Mann*, 564 P.2d 53 (Alaska 1977). The question is whether John A. Renner, who died intestate in 1932 and who owned a 160-acre piece of land on the Kenai peninsula, equitably adopted his stepson, Lewis Shell. The probate master concluded that no such equitable adoption occurred. Her report was accepted, over the objections of the plaintiffs-appellants, by the superior court. Since we find that the master's findings of fact are not clearly erroneous, we affirm the judgment.

Plaintiffs are the children of Lewis Shell[1] and the grandchildren of John Renner's wife Polly.[2] C Street Foodland, Inc. ("Foodland"), an Alaska corporation which has contracted with the Shell family to help them obtain title to the Kenai property and develop it is also a plaintiff. The defendant-appellee estate was opened in 1968 on behalf of a number of collateral heirs of John Renner;[3] its administrator is Patricia Carlson.

The procedural history of this case is lengthy and complex. Suffice it to say that the present appeal is from a judgment in two cases, consolidated below: an action by the Shell family and Foodland to remove Carlson as administrator of the estate and appoint a person jointly chosen by the plaintiffs as personal representative, and an action by Foodland, in which the Shell family originally were defendants but were subsequently realigned as plaintiffs, to quiet title in the Kenai property.

Lewis Shell was born in 1890 to Sphenix and Polly Shell. His father died when Lew-

3. Renner survived his wife and had no natural children. According to the plaintiffs, he told his wife and stepson that he had grown up in an orphanage, and did not know any of his blood relatives, or even if any existed.

is was about sixteen months old. At some point before Lewis was five, Polly married John Renner. Lewis grew up with Polly and John Renner, and used the name "Renner" in his youth. In the early 1900's Lewis and his stepfather mined for gold together. In 1918 Lewis was married, and resumed his use of the name "Shell". The marriage certificate, using the name "Shell" was witnessed by John Renner. He and his wife lived briefly with John and Polly Renner in Sunrise, near Hope, but then moved to Seldovia. Polly Renner died in 1927, and John Renner in 1932.

In *Calista Corporation v. Mann*, 564 P.2d at 62, we said:

> After reviewing the cases of other jurisdictions, we have identified and now set forth the pertinent considerations which the trial court must examine in order to determine if equitable adoption can be established. The five elements that we find to be pertinent considerations are (1) the foster parents must have died intestate; (2) there must have been a contract or agreement to adopt, either express or implied from the surrounding facts; (3) the foster parents must have represented to the child, either expressly or by their conduct, that he or she was adopted, thereby inducing the child, to the extent that his or her age permitted, to perform duties expected; (4) the child, to the extent that his or her age permitted, must have carried out his or her filial obligations in the belief that he or she was an adopted child; and (5) any steps taken by the foster parents to legally adopt the child must not have been perfected. We further hold that equitable adoption must be established by clear and convincing evidence. [Footnotes omitted.]

We added that "because of the evidentiary problems of proof as to elements 3 and 4, we find that the establishment of these two elements is not mandatory." *Id.* at 62 n. 22. While our opinion in *Calista Corporation* stressed the Native cultural context of the adoption there, we clearly did not intend to limit the application of the doctrine to traditional cultures only.

Of the factors we discussed in *Calista Corporation*, (1) and (5) are satisfied here. John Renner died intestate, and no adoption was perfected. Factors (3) and (4), involving representations by the parent and the resulting conduct by the child, were not proved, possibly because essential witnesses would have died prior to the time that this litigation arose. As to factor (2), no evidence of an express agreement to adopt was presented, so the question becomes, was there sufficient evidence introduced to establish clearly and convincingly the existence of an implied contract to adopt? The probate master believed there was not, and thus found no equitable adoption. We do not find her conclusion to be clearly erroneous.

The heart of the master's opinion is her statement that "Mr. Renner treated Lewis no differently than any good stepparent would." Such treatment, without more, does not show the implied agreement to adopt necessary for a finding of equitable adoption.[4] As we indicated in *Calista Corporation*, the doctrine of equitable adoption is a relatively narrow remedy, and not a sweeping tool to combat perceived injustices in intestacy proceedings. The root of plaintiffs' grievance here is the intestate succession statutes, which in 1932 did not recognize stepchildren as heirs of a decedent.[5] *Calista Corporation* does not support a holding that stepchildren treated well by their stepparents necessarily become their legal heirs.

Plaintiffs point to several facts which they contend show more than a loving relationship between Renner and Lewis: Polly Renner's lack of education and probable ignorance of adoption laws; the general inaccessibility of the courts from Hope and

---

**4.** *Hogane v. Ottersbach*, 269 S.W.2d 9, 13 (Mo. 1954); *Capps v. Adamson*, 242 S.W.2d 556, 560 (Mo.1951); *Lowrey v. Botello*, 473 S.W.2d 239, 242 (Tex.Civ.App.1971) (conduct of stepmother "only evidences the natural love and affection that many stepparents and stepchildren have for each other").

**5.** §§ 4651, 4664, CLA 1933.

Sunrise; Polly's and Lewis' contributions to the Renner homestead; Lewis' use of the Renner name til his marriage; Renner's and Lewis' cooperation in mining. But the estate also points to facts in its favor: the Renner's occasional access to and use of the legal system for various matters; Lewis' resumption of the name "Shell"; the absence of any children listed on Renner's death certificate; the absence of any evidence that adoption was ever considered. Given this evidence, we cannot say that the probate master was clearly in error in finding no implied agreement by John Renner to adopt his stepson.

The judgment of the superior court is AFFIRMED.

RABINOWITZ, C. J., not participating.