In the Matter of the ESTATE OF Clifford JOHNSON,

Maynard Johnson, Appellant,

v.

Hughes Thorsness Powell Huddleston & Bauman LLC, Appellee.

No. S–11084.

Supreme Court of Alaska.

July 29, 2005.

Rehearing Denied Aug. 31, 2005.

Hugh G. Wade and Marion C. Kelly, Wade Kelly & Sullivan, Anchorage, for Appellant.

James M. Gorski and Robert L. Manley, Hughes Thorsness Powell Huddleston & Bauman LLC, Anchorage, and Susan C. Orlansky, Feldman & Orlansky, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Maynard Johnson moved to reopen probate proceedings for his father's estate because he believed the legal fees incurred during the closing of the estate were excessive. The superior court denied his motion and Maynard Johnson appealed. We remanded the case to the superior court to determine the reasonableness of professional fees charged to the estate. The probate master held an evidentiary hearing and concluded that the legal fees were reasonable, and the superior court approved the findings. Maynard Johnson appeals that determination and several related matters. Because we conclude that the appellee did not meet its burden of proving the reasonableness of all of the legal fees charged to the estate, we reverse in part the superior court's order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Clifford M. Johnson died in 1983. His sister, Evva Betts, was appointed as the personal representative for his estate under his will. The will bequeathed $5,000 to Nancy Wharton and the residue of the estate to Clifford Johnson's son, Maynard Johnson. Maynard Johnson is the appellant in this case.

In 1984 attorneys for the personal representative submitted an inventory of the es-

tate assets. The total assets were valued at $682,798. The principal assets in the estate were a partnership in a drilling company, a bar and store in South Naknek, several parcels of land, and $70,000 in accounts receivable from the store.[1]

The estate debts totaled $185,746.[2] The debts consisted of a $100,321.95 obligation to Humana Hospital for expenses associated with Clifford Johnson's illness, a bank note in the amount of $17,961.82, federal taxes in the amount of $41,695, promissory notes to private parties, trade accounts relating to the bar and store, and additional medical bills.

Following his father's death, Johnson continued to operate the bar and store. He sold his father's interest in the drilling business for $50,000, as well as some fuel tanks and other estate property. He used the proceeds from these sales to pay some of the estate debts. In an earlier proceeding relating to the estate, the probate master found that Johnson illegally retained between $1,000 and $4,000 in proceeds from this sale without depositing them into an estate account.

In 1984 Humana Hospital applied for creditor's protection. The probate master held a hearing and ordered the personal representative to post a bond in the amount of $200,000. The probate master found that Johnson had been acting as an agent for the estate and ordered him appointed co-personal representative. Acting as co-personal representatives, Evva Betts and Johnson posted a $200,000 bond issued by Safeco in June 1984.

In April 1986 Johnson entered into an earnest money contract to sell the bar and store. The transaction was scheduled to close in June 1986, but the sale did not close during Johnson's tenure as co-personal representative. Johnson also entered into a verbal contract to sell two parcels of land owned by the estate. In an earlier proceeding relating to this case, the probate master found that Johnson personally retained the proceeds from the land sales.

In May 1986 Humana Hospital filed a motion to remove Evva Betts and Johnson as personal representatives for the Clifford Johnson estate. Humana was represented by the law firm of Hughes, Thorsness, Gantz, Powell & Brundin (Hughes, Thorsness). Humana argued that for almost two years the estate had not made payments on the balance owed to Humana. Humana also pointed out that the estate had yet to pay other debts, including the federal estate tax owed on the estate. Humana charged that the co-personal representatives had exhibited "nonfeasance" in their management of the estate. Although Betts and Johnson disagreed with Humana's characterization of their estate management, they agreed to resign as personal representatives. On May 30, 1986, the superior court issued an order appointing the public administrator as successor personal representative for the estate. The order specifically authorized the public administrator to employ Hughes, Thorsness to perform legal services to assist with the administration of the estate.[3]

The public administrator employed Hughes, Thorsness to perform legal services relating to the estate from May 1986 through the closing of the estate. Legal services provided for the estate by Hughes, Thorsness included the sale of the bar and store in South Naknek; resolution of a claim against the estate by the Naknek Electric Company;

1. The appellee claims there was also a plot of land not listed in the inventory that was appraised at $41,100.

2. In *Johnson v. Doris*, we stated that "[c]laims against the estate totaled $228,419." 933 P.2d 1139, 1140 (Alaska 1997). Johnson derived the revised figure of $185,746 from the estate tax return. Hughes, Thorsness does not dispute the figure.

3. Johnson argues that the superior court should have prevented Hughes, Thorsness, counsel for a creditor of the estate, from arranging for the public administrator's appointment and then handling all of her legal work because this created a conflict of interest and a situation where the public administrator implemented no controls over Hughes, Thorsness's spending. We do not address the propriety of the public administrator's appointment because Johnson did not raise this issue in his first appeal, and it is beyond the scope of our remand in this case. *See State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 873–74 (Alaska 2003) (observing that "[s]uccessive appeals should narrow the issues in a case, not expand them").

resolution of a claim against the estate by Peter Pan Seafoods; negotiation of an agreement tolling the statute of limitations for potential claims that the estate had against Betts and Johnson regarding their mismanagement of the estate; transactions involving a motion to forfeit the $200,000 Safeco surety bond that Betts and Johnson posted in response to the probate court's 1984 order; resolution of a claim filed against the estate by the Odom Company; collection of small claims owed to the estate; and efforts to establish clear legal title to the estate's various real estate holdings. The fees and expenses charged by Hughes, Thorsness for these and other legal tasks are the subject of this appeal.

On October 29, 1992, Hughes, Thorsness submitted a petition to the probate court for settlement, distribution, and approval of the final accounting on the estate. The petition included an accounting covering the period from May 30, 1986 (the date the public administrator was appointed successor personal representative) through July 31, 1992. The accounting reported professional fees charged by Hughes, Thorsness in the amount of $155,560 for legal fees and $11,791.43 for expenses during that period, totaling $167,351.43. A subsequent accounting for the period from August 1, 1992 through February 28, 1993 reflected that payments in the amount of $30,409.87 were made to Hughes, Thorsness for the closing fees and expenses. In total, Johnson claims that Hughes, Thorsness received legal fees in the amount of $197,761.30 during this period.

The superior court judge entered an order approving the final accounting and decree of distribution on December 31, 1992. Johnson claims that the total payments he received from the estate were only $2,411.65. Hughes, Thorsness maintains that Johnson also received an additional $18,722.80 and parcels of real estate valued at $29,700.

Before closing the estate, Hughes, Thorsness established a trust for liquidation of assets to "satisfy any outstanding potential claims that may be asserted against the Estate or the successor Personal Representative by unsatisfied creditors...." The superior court approved the transfer of $25,000 from the estate to the liquidation trust. Christy Morse, a former Hughes, Thorsness paralegal, was designated as trustee. Between June 11, 1993 and April 18, 1996, payments were made to Hughes, Thorsness from the trust to cover the firm's expenses in litigation regarding legal fees charged to the estate.

### B. Proceedings

#### 1. *Johnson v. Doris*

On November 3, 1993, Johnson filed a motion under Alaska Civil Rule 60(b) to reopen the probate proceedings to review the legal and accounting fees. The probate master recommended that Johnson's motion be denied, and Superior Court Judge Larry D. Card issued an order denying the motion. Johnson appealed to this court. We reversed the superior court's denial of Johnson's motion to set aside the final probate judgment and remanded for review of the fees under AS 13.16.440,[4] but we did not decide whether the fees and costs were excessive.

#### 2. Discovery for evidentiary hearing

On remand, Johnson submitted interrogatories to the public administrator requesting a breakdown of professional fees. Hughes, Thorsness responded by letter, stating that the public administrator was no longer a party. Hughes, Thorsness also submitted an itemized computer printout of its billing activity relating to the estate. Johnson then filed a motion to compel discovery, arguing that the billing records provided by Hughes, Thorsness did not provide a breakdown of

---

4. *Johnson v. Doris*, 933 P.2d at 1144, 1146. AS 13.16.440 states:

[T]he propriety of employment of any person by a personal representative including any attorney, auditor, investment advisor, or other specialized agent or assistant, the reasonableness of the compensation of any person so employed, or the reasonableness of the compensation determined by the personal representative for the personal representative's services, may be reviewed by the court. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.

the time billed for work on various legal projects.

The probate master recommended that the public administrator appoint a successor personal representative to execute responses to Johnson's discovery requests.[5] The probate master also recommended that the superior court deny Johnson's motion to compel production because the billing records provided by Hughes, Thorsness were the only billing records available. On April 7, 1998, Superior Court Judge Larry D. Card issued an order adopting all of the probate master's recommendations.

### 3. Motion for order to show cause

While in the process of conducting discovery on remand, Johnson learned that the trustee for the liquidation trust had withdrawn funds from the trust to compensate Hughes, Thorsness for legal fees incurred while defending Johnson's motion to reopen the estate and Johnson's first appeal to this court. On April 30, 1998, Johnson filed a motion for order to show cause requesting sanctions against Hughes, Thorsness for withdrawing funds from the trust for this purpose. Hughes, Thorsness opposed the motion. The superior court did not take action on the motion.

### 4. Evidentiary hearing

The probate master held a four-day evidentiary hearing on the reasonableness of the professional fees from June 10–15, 1998. On April 21, 1999, Probate Master John E. Duggan issued a master's report recommending that the superior court re-approve the order approving the final accounting and decree of distribution, with one minor exception.[6] On May 3, 1999, Johnson moved for a new trial or, in the alternative, de novo review of the record. On November 15, 1999, Superior Court Judge Card denied Johnson's motion and adopted the probate master's rec-

ommendations with respect to every issue except the invasion of the liquidation trust, which Judge Card found had not been addressed. Judge Card entered a separate order directing the probate master to schedule a status conference regarding attorney's fees paid from the liquidation trust.

### 5. Summary judgment regarding fees paid from the liquidation trust

On March 14, 2000, Hughes, Thorsness moved for partial summary judgment regarding the removal of attorney's fees from the liquidation trust. On January 16, 2003, the superior court issued an order granting partial summary judgment to Hughes, Thorsness on the question of attorney's fees issued from the liquidation trust. The order did not determine the reasonableness of fees incurred.

### 6. Costs and attorney's fees

On April 28, 2003, the superior court entered an order and judgment granting Hughes, Thorsness costs and attorney's fees associated with Johnson's challenge to the professional fees. The superior court awarded Hughes, Thorsness $23,501.25 in attorney's fees, $3,336.88 in costs, and interest at the rate of 3.75% per annum.

Maynard Johnson appeals four separate orders issued by the superior court. First, he appeals the superior court's order dated April 7, 1998 denying his motion for an order compelling discovery relating to bills charged to the estate by Hughes, Thorsness. Second, Johnson appeals the superior court's November 15, 1999 order approving the probate master's recommendations regarding legal fees and expenses billed to the estate by Hughes, Thorsness. Third, Johnson appeals the superior court's January 16, 2003 order granting partial summary judgment to Hughes, Thorsness regarding attorney's fees

---

**5.** Johnson directed his initial discovery requests to the public administrator. Charlene Doris, the public administrator who served as successor personal representative for the estate, was no longer employed by the state when the probate master issued its discovery recommendations. The probate master determined that the public administrator was no longer an appropriate party and recommended that the public administra-

tor designate a successor personal representative to respond to discovery requests.

**6.** The probate master's report recommended that the court order Hughes, Thorsness to disgorge $660 relating to the late renewal of a liquor license at the store.

paid from the liquidation trust between March 1993 and September 1996. Finally, Johnson appeals the superior court's April 28, 2003 order awarding attorney's fees and costs in the amount of $26,838.13 to Hughes, Thorsness.

## III. DISCUSSION

### A. Standard of Review

■ We review a lower court's discovery rulings for abuse of discretion.[7] A lower court's determination of the reasonableness of attorney's fees and personal representative's fees in probate matters is also reviewed for abuse of discretion.[8] We find that a trial court abused its discretion "only when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[9] Factual findings issued by a probate master and adopted by the superior court judge are reviewed under the clearly erroneous standard.[10] A lower court's decision to grant summary judgment is reviewed de novo. Summary judgment is only appropriate where there are no issues of material fact and the moving party is entitled to judgment as a matter of law.[11] We apply our independent judgment to questions of law.[12]

### B. The Probate Court Abused Its Discretion when It Denied Johnson's Motion To Compel Discovery.

■ Johnson appeals the superior court's order dated April 7, 1998 denying his motion for an order to compel Hughes, Thorsness to respond to Johnson's discovery requests.[13] Johnson requested that Hughes, Thorsness provide the "amount of time billed out for each service listed in the invoices presented to the Estate for payment." In response, Hughes, Thorsness provided Johnson computerized printouts of its billing records for the firm's work on the estate.[14] The printouts included the date of each task, the time spent on the task, the charges for the task, and a brief description of the task, but the printouts did not always specify the matter at issue. For example, one entry states, "Research on title," without specifying which title.

Johnson's principal complaint is that Hughes, Thorsness did not provide breakdowns of the amount of time billed for each legal project charged to the estate, as Johnson requested in his initial discovery requests. For instance, Hughes, Thorsness did not provide a breakdown of the time it billed for its work on the sale of the South Naknek bar and store. In its recommendation to deny Johnson's request to compel billing

---

7. *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 844 (Alaska 2003) (citation omitted).

8. *Helgason v. Merriman*, 36 P.3d 703, 705 (Alaska 2001) (applying the abuse of discretion standard to a review of a motion to remove a personal representative and noting that the abuse of discretion standard is applied to reviews of attorney's fees and personal representatives' fees in the probate context) (citing *Gudschinsky v. Hartill*, 815 P.2d 851, 854 (Alaska 1991) (applying the abuse of discretion standard to review the lower court's determination of "reasonable compensation" for a personal representative in a probate matter) and *In re Estate of Gregory*, 487 P.2d 59, 64 (Alaska 1971) (reviewing an award of attorney's fees to an estate administrator for abuse of discretion)).

9. *Buster v. Gale*, 866 P.2d 837, 841 n. 9 (Alaska 1994) (internal quotation marks omitted).

10. *Bowman v. Blair*, 889 P.2d 1069, 1072 n. 5 (Alaska 1995); *C. St. Foodland v. Estate of Renner*, 596 P.2d 1170, 1172 (Alaska 1979).

11. *Odsather v. Richardson*, 96 P.3d 521, 523 n. 2 (Alaska 2004).

12. *Summers v. Hagen*, 852 P.2d 1165, 1169 (Alaska 1993).

13. We conclude in Part III.E of this decision that the superior court should vacate the superior court's approval of Hughes, Thorsness's fees to the extent that Hughes, Thorsness has not demonstrated their reasonableness. Therefore, no further discovery is necessary on the issue of reasonableness of fees. We nonetheless discuss the discovery issue here because Johnson's discovery requests are relevant to our analysis of the proceedings at trial.

14. The firm did not retain bills for the period from May 9, 1986 through November 25, 1986 because of a firm policy not to retain billing memoranda for more than a six-year period. As we discuss below, Hughes, Thorsness had the burden of proof in this matter. To the extent that the firm's policy impacted its ability to satisfy its burden of proof, Hughes, Thorsness, not Johnson, should bear the costs.

breakdowns, the probate master found that Hughes, Thorsness made available to Johnson all of the billing information it possessed.

As a result of the trial court's decision, Johnson was left to sort through the billing records on his own in an attempt to determine the amount billed by Hughes, Thorsness for each matter. As Johnson points out in his brief, Hughes, Thorsness was better positioned than Johnson to parse through the records to determine the relevant matter for which each item was billed. Under Rule 1.5 of the Alaska Rules of Professional Conduct, the factors to be weighed when determining the reasonableness of a lawyer's fees include "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." [15] In order to make this determination, it was critical for the superior court to determine the amount billed for each legal service provided to the estate. The billing records submitted by Hughes, Thorsness during discovery made that task nearly impossible.

While we have not previously examined the required level of specificity for billing records in probate matters, we have indicated that some level of specificity is required in billing records in disputes involving attorney's fees generally. For instance, in *Hayes v. Xerox Corp.*,[16] we reviewed attorney's fees in the context of Alaska Civil Rule 82. We held that the lower court should have required Xerox, the party receiving attorney's fees for its own legal work, to itemize its fee request.[17] We reasoned that "Xerox's counsel should have specified the services included in those hours submitted," and we remanded the issue "so that the superior court [could] order Xerox's counsel to itemize the hours and nature of the work spent on [the] case...."[18] Johnson also points us to a federal bankruptcy decision originating in Alaska in which the court determined the reasonableness of attorney's fees incurred during bankruptcy proceedings. The bankruptcy court observed: "Time records must be adequate to show the amount of time spent and the manner in which it was spent ... [a]n entry of 'research' or 'telephone call' is insufficient." [19]

These cases, together with factors set forth in Alaska Rule of Professional Conduct 1.5, indicate that some level of specificity in billing records must be submitted to the superior court for purposes of resolving disputes regarding attorney's fees. Because many of the billing entries submitted by Hughes, Thorsness were so vague that Johnson could not discern which legal matter corresponded to each entry, we conclude that the superior court abused its discretion when it denied Johnson's discovery request.

## C. The Probate Master Improperly Placed the Burden of Proof on Johnson at the Evidentiary Hearing.

 Johnson argues that the probate master erroneously put the burden of proof on him during the evidentiary hearing, in part by requiring him to proceed first. According to our case law, expenses must be "reasonable" and attorney's fees "necessary" in order for a personal·representative to receive reimbursement for attorney's fees under AS 13.16.435,[20] the statute that authorizes a personal representative to receive reimbursement from the estate for attorney's fees incurred in the administration of the estate. Under the reasonable and necessary standard, the personal representative and the attorneys are in the best position to demonstrate that the fees were in fact reasonable and necessary. In this case, Hughes, Thorsness performed extensive legal services for the estate and was therefore the entity in the best position to demonstrate the reasonableness of its own fees. Like other jurisdictions that have considered this

**15.** Alaska R. Prof. Conduct 1.5(a)(1).

**16.** 718 P.2d 929 (Alaska 1986).

**17.** *Id.* at 939.

**18.** *Id.*

**19.** *In re Four Star Terminals, Inc.*, 42 B.R. 419, 426 n. 1 (Bankr.Alaska 1984).

**20.** *See Enders v. Parker*, 66 P.3d 11, 15 (Alaska 2003); *see also* 31 Am.Jur.2d *Executors and Administrators* § 428 (2004).

question,[21] we conclude that the burden of proving the reasonableness of attorney's fees in estate actions falls on the attorney whose fees are being challenged, particularly where the attorney is effectively standing in the shoes of the personal representative.[22] The burden of proof was on Hughes, Thorsness to demonstrate that the expenses and fees charged to the Clifford Johnson estate were necessary and reasonable.

Although the probate master stated in his report that the burden of proof at the evidentiary hearing was on Hughes, Thorsness, the report reflects that the probate master seemed to expect Johnson to carry the burden at various points in the proceedings. The superior court not only required Johnson to proceed first,[23] but indicated that Johnson had failed to produce adequate evidence regarding the amount billed for some matters. For instance, regarding fees relating to the Peter Pan Seafoods claim, the superior court wrote, "[Johnson's] evidence failed to show that $25,000.00 was billed to the estate as he claimed or that [Hughes, Thorsness] performed unnecessary legal services or billed excessively for work done...." And regarding fees incurred in the creation of the tolling agreement, the superior court wrote, "[Johnson] offered no evidence in support of his calculations [of the amount billed] and argument and his expert witness did not have an opinion whether [Hughes, Thorsness's] fees in this regard were unreasonable...." State-

ments such as these indicate that the superior court expected Johnson, rather than Hughes, Thorsness, to produce evidence as to the amount and reasonableness of fees.

## D. Hughes, Thorsness Should Have Been on Notice that Its Fees Might Be Challenged.

■ Before we examine whether Hughes, Thorsness met its burden of proving the reasonableness of the fees charged to the estate, we note that Hughes, Thorsness should have been on notice that its fees were challengeable and therefore should have been prepared to present evidence establishing the reasonableness of its fees. This is true for three reasons. First, our decision in *Johnson v. Doris* made clear that Hughes, Thorsness would be expected to demonstrate the reasonableness of its fees.[24] Second, the amount of fees was large in relation to the value of the estate. And third, Hughes, Thorsness owed a fiduciary duty to the estate.

When we remanded *Johnson v. Doris* to the probate court for an inquiry into the reasonableness of the professional fees, we noted that the fees were large in relation to the value of the estate. We observed:

The personal representative's final accounting did not adequately support [the professional fees charged to the estate]. No showing was made that particular services were needed; no showing was made

**21.** *See, e.g., In re Estate of McCranor*, 176 A.D.2d 1026, 575 N.Y.S.2d 181, 182–83 (N.Y.App.Div. 1991) (finding that the lower court had incorrectly placed the burden on the party challenging the fees, and time sheets submitted by the attorneys reflected that they had billed the estate for ministerial tasks that could have been performed by laypersons); *In re Estate of Sonovick*, 373 Pa.Super. 396, 541 A.2d 374, 376 (1988) (finding that the trustee and her attorney had not met their burden of proving the reasonableness of the fees because they did not offer an explanation as to how the fees were computed or what work was actually done); *In re Estate of Eisenberg*, 433 So.2d 542, 543 (Fla.Dist.App.1983) (reversing the trial court's approval of attorney's fees because expert testimony about the reasonableness of fees did not examine the reasonableness of the time expended, and the testimony as to time expended was based upon reconstructed billing records); *In re Estate of Larson*, 103 Wash.2d 517, 694 P.2d 1051, 1060 (1985) (en banc) ("An estate attorney must assume the burden of proving that

the hours charged to the estate were reasonable and necessary.").

**22.** At the evidentiary hearing, Charlene Doris, the former personal representative for the estate, testified that she had "relied upon the advice of [Hughes, Thorsness partner Robert Manley] as the attorney for the estate" when handling matters relating to the estate.

**23.** Hughes, Thorsness correctly notes in its brief that "[t]rial courts are granted 'almost unlimited discretion' in determining the order of proof at trial." *Fairbanks N. Star Borough v. Lakeview Enters., Inc.*, 897 P.2d 47, 60 n. 28 (Alaska 1995) (quoting *American Nat'l Watermattress Corp. v. Manville*, 642 P.2d 1330, 1339 (Alaska 1982)). In this case the order of proof was only one factor indicating that the burden was not allocated appropriately.

**24.** 933 P.2d at 1143.

as to the number of hours spent. We note that the probate court should have been alerted by the amount of the professional expenses relative to the size of the estate, and should have given substantive consideration to the proposed fees and costs.[25] Although we did not decide whether the fees and costs were excessive, we concluded that review under AS 13.16.440 was appropriate.[26] This language made clear that the purpose of the remand was to determine whether the fees incurred were necessary and should have alerted Hughes, Thorsness that it would be expected to account for the fees.

The fact that the attorney's fees were so large in relation to the value of the estate should also have put Hughes, Thorsness on notice that it might be expected to provide justification for the fees. In general, courts consider the fee amount in relation to the size of the estate when determining the reasonableness of attorney's fees in the estate context.[27] Courts in a number of jurisdictions have found that attorney's fees in probate matters were excessive because they were unreasonably large relative to the size of the estate. For instance, a New York court reduced the amount of attorney's fees approved in a probate matter because the fees amounted to twenty-five percent of the size of the estate.[28] Similarly, a Florida appellate court found attorney's fees in the sum of $37,500 for an estate worth $180,000 "to be so excessive that it shocks the conscience of this court."[29] While we do not think it necessary to determine exactly what percentage, if any, is high enough to make attorney's fees per se unreasonable, we note that the higher the attorney's fees in relation to the total value of the estate, the more prepared an attorney should be to defend those fees.

In this case, Hughes, Thorsness owed a particular responsibility to the estate because of the fiduciary relationship that existed between Hughes, Thorsness and the estate. As the Washington Supreme Court concluded in a case similar to this one, attorneys assisting personal representatives in probate matters owe a fiduciary duty to the estate and its beneficiaries. The court reasoned:

> In probate, the attorney-client relationship exists between the attorney and the personal representative of the estate. The personal representative stands in a fiduciary relationship to those beneficially interested in the estate. He is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs. The personal representative employs an attorney to assist him in the proper administration of the estate. *Thus, the fiduciary duties of the attorney run not only to the personal representative but also to the heirs.*[30]

In a recent case involving a challenge to attorney's fees incurred in the administration of an estate, we observed that "[t]he fiduciary duty is 'the highest standard of duty implied by law.'"[31] Here, Hughes, Thorsness's extensive activities on behalf of the estate established a fiduciary duty that extended to the estate and its beneficiaries. This duty obligated Hughes, Thorsness to protect the interests of the estate and its beneficiaries. Given the large amount of fees in relation to the value of the estate, together with the fiduciary relationship between the law firm and the estate, Hughes, Thorsness should have been on notice that it might be called upon to explain the fees in detail.

### E. Hughes, Thorsness Did Not Meet Its Burden of Proving that All of Its Fees Were Reasonable and Necessary.

■ Having determined that Hughes, Thorsness had the burden of proving that the

25. *Id.*

26. *Id.*

27. *See* Allen E. Korpela, Annotation, *Amount of Attorneys' Compensation in Proceedings Involving Wills and Administration of Decedents' Estates,* 58 A.L.R.3d 317, § 2 (2004).

28. *Estate of McCranor,* 575 N.Y.S.2d at 183.

29. *Estate of Eisenberg,* 433 So.2d at 543.

30. *Estate of Larson,* 694 P.2d at 1054 (emphasis added) (citations omitted). *But see Trask v. Butler,* 123 Wash.2d 835, 872 P.2d 1080, 1085 (1994) (holding that an attorney hired by a personal representative does not owe a duty to estate or beneficiaries that would allow heirs to bring a malpractice action against attorney because there is no privity of contract).

31. *Enders,* 66 P.3d at 16 (quoting BLACK'S LAW DICTIONARY 625 (6th ed.1990)).

fees and expenses were reasonable and necessary, we now examine whether Hughes, Thorsness met that burden. Because the evidence presented by Hughes, Thorsness failed to justify approximately $68,500 of the total fees charged to the estate, we conclude that Hughes, Thorsness did not meet its burden as to that $68,500 in fees.

At the outset, we note that the reasonableness of attorney's fees is governed by the factors in Rule 1.5(a) of the Alaska Rules of Professional Conduct.[32] Rule 1.5(a) of the Alaska Rules of Professional Conduct states:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.[33]

As discussed above, another factor that a trial court may consider when determining the reasonableness of fees in the estate context is the size of the estate.[34]

The parties disagree about the total amount that Hughes, Thorsness actually billed to the estate. At the evidentiary hearing, Johnson submitted evidence reflecting that the total amount billed by the firm, including fees and expenses, was approximately $201,000 at the time of the hearing.[35] Johnson arrived at this number by adding together all of the invoices received by the estate from Hughes, Thorsness. Hughes, Thorsness's estimate was based on the testimony of the billing partner in charge of the Clifford Johnson estate, Robert Manley. He testified that the fees paid to the firm by the estate were "probably closer to $180,000." [36] But Manley did not present any evidence to indicate that the firm billed an amount less than that reflected by the invoices. And on cross-examination, Manley conceded that the estate had been billed approximately $185,000 in legal fees and another $16,000 in costs. The probate master did not make any findings regarding the exact dollar amount billed by the firm during its involvement with the estate; nor did the probate master determine how many hours were spent on each matter.[37]

Both parties presented expert testimony about the reasonableness of the fees. Hughes, Thorsness's expert, Trigg Davis, testified that the matters that Hughes, Thorsness handled were necessary to the estate. For instance, regarding one of the

---

**32.** Alaska Probate Rule 7.1 provides that "[a] personal representative's fee shall be reasonable." The factors in Probate Rule 7.1 are similar to those in Rule 1.5 of the Alaska Rules of Professional Conduct.

**33.** Alaska R. Prof. Conduct 1.5(a).

**34.** At least one court has considered this factor because the attorney's own exposure to liability depends in part on the size of the matter. *In re Estate of Bolton*, 403 N.W.2d 40, 43–44 (Iowa App.1987).

**35.** Johnson's attorney argued at a post-hearing oral argument before Judge Card that the exact amount billed to the estate was $200,793.04.

**36.** Manley indicated during his testimony that he believed the fees to be approximately $180,000, not including costs. Manley argued at the post-hearing oral argument before Judge Card that the total amount paid to Hughes, Thorsness was $199,747.53.

**37.** The probate master wrote that Hughes, Thorsness "billed the estate for legal services provided the successor personal representative, the court public administrator, in the total sum of $155,560 and $11,791.43 for costs through preparation of the final accounting ... and estimated an additional $20,000 to close the estate." The probate master derived this figure from the final accounting.

most contested aspects of Hughes, Thorsness's management of the estate—the decision to collect small claims owed to the estate from debtors in remote villages—Davis stated, "the area where I see the greatest problem . . . everybody sees it, is the small claim area, but . . . that's not saying it wasn't necessary to do something." Davis continued, "in terms of dollars and cents [the amount of small claims collected] wasn't the greatest result, but that's different than saying it wasn't necessary, and that's different than saying it wasn't a reasonable decision when it was made." Davis also testified that the hourly fees charged by Hughes, Thorsness were reasonable [38] and that in his opinion the overall fees charged to the estate were reasonable. On cross-examination, Davis testified that he had not evaluated whether time was efficiently spent on the estate. Davis did not provide any testimony about the number of hours spent or amount of money billed for various legal services provided by Hughes, Thorsness. When asked whether he had formed an opinion as to whether the time spent on any particular task was reasonable and necessary, Davis responded that he "didn't go through and break [the estate] into its parts."

Johnson's expert, Robert Erwin, testified that he believed the fees charged to the estate to be a "staggering amount." He stated of the billing, "It's beyond the range of any experience I've ever had, and it's the most I've ever seen charged in a probate case." Erwin testified that he sorted through Hughes, Thorsness's bills to determine how much was charged for each matter handled by the firm. The probate master admitted Erwin's estimates as the basis for his expert opinion regarding the reasonableness of the fees, but not as proof of the fees actually charged. Manley disputed Erwin's

estimates for each matter, maintaining that he had adjusted some of the billing downward to reflect what he thought was a reasonable fee for each task. Manley did provide his own figures for some of the matters, but the transcript reveals, and the probate master acknowledged, that Manley's figures, too, were merely estimates. For instance, regarding the sale of a bar and store in South Naknek, Manley stated of the amount billed, "[Erwin] says 8,600 odd dollars, and I think the real number is—is closer to 7,500 something like that." And regarding a summary judgment motion that Hughes, Thorsness handled for the estate, Manley stated, "[Erwin's] total assertion on [the matter] is about—a little shy of $24,000, and actually I think the total fees were about $20,000. . . ." In most cases, Manley attributed the discrepancies to "writedowns."

By the end of the hearing, Manley had testified regarding $112,550 worth of billing for various matters. After subtracting $15,000 that was billed for costs, rather than legal fees, Johnson's attorney asked Manley how he accounted for the remaining $72,000 that the firm billed to the estate.[39] Manley attributed the remainder of the fees to "tax matters" and "assisting the personal representative in fiduciary matters." But aside from an estimate that the law firm paid one accountant $1,500 and a tax attorney $2,000, Manley did not provide any level of specificity about actual bills for these services.[40]

According to Rule 1.5 of the Alaska Rules of Professional Conduct, the first factor to be weighed when determining the reasonableness of a lawyer's fee is "the time and labor required." [41] But the case presented by Hughes, Thorsness at the evidentiary hearing focused on the necessity of the legal services provided and the reasonableness of

---

**38.** Johnson does not contend that the hourly rates charged by Hughes, Thorsness were unreasonable in light of community standards.

**39.** It appears that both parties were working from a total billing figure of $200,000 at this point in the proceedings. After subtracting $15,000, Johnson's attorney asked Manley, "the difference between 112,000 and 185,000 is what, $72,000?" If the total amount billed was approximately $201,000, as reflected in the in-

voices, minus $15,000 in costs, Manley's testimony failed to account for $73,450.

**40.** Johnson's attorney also asked Manley about $53,000 that went to accountants. The final accounting for the estate indicates that accountant's fees in the amount of $53,395.82 were paid out of the estate. These fees were in addition to the fees and expenses paid to Hughes, Thorsness.

**41.** Alaska R. Prof. Conduct 1.5(a)(1).

the firm's hourly rates without addressing the time and labor required for each matter handled by the firm. In fact, outside of Manley's estimates at the evidentiary hearing, Hughes, Thorsness presented almost no evidence regarding the time and labor required to provide various legal services to the Clifford Johnson estate. Hughes, Thorsness's timekeeping records did provide breakdowns of the time spent on specific tasks such as telephone calls or conferences, but many of the billing entries did not indicate the matter associated with the entry. The result was that Johnson was left to parse through the billing records to determine how much time was spent on each matter even though the burden was on Hughes, Thorsness.

Having reviewed the transcript and the probate master's report, we conclude that the superior court erred in failing to determine exactly what amount Hughes, Thorsness billed to the Clifford Johnson estate. We also conclude that Hughes, Thorsness failed to meet its burden of proving the reasonableness of at least $68,500 in fees because the law firm did not account for these fees at the evidentiary hearing, and many of the entries in the billing records are too vague to establish whether the charges were reasonable for any given matter. This number represents approximately $72,000 for which Hughes, Thorsness did not account during the evidentiary hearing, minus $3,500 that Manley testified went to an accountant and a tax attorney. We recognize that Hughes, Thorsness provided valuable legal services to the estate. However, the firm's billing records were not

sufficiently detailed for the superior court to determine the reasonableness of fees not explained by Hughes, Thorsness during the hearing.[42]

As we discussed above, Hughes, Thorsness was on notice that it should have been prepared to prove the precise nature, necessity, and reasonableness of all of its legal fees. This included proof of the reasonableness of the time spent and amount charged for the various matters handled by the estate. Because Hughes, Thorsness failed to meet its burden as to $68,500 of the fees, we must vacate the superior court's order to that extent.[43]

### F. The Superior Court Erred in Granting Hughes, Thorsness Partial Summary Judgment on the Question of Money Withdrawn from the Liquidation Trust To Pay Legal Fees and Expenses.

Johnson asserts several claims relating to the liquidation trust established at the request of Hughes, Thorsness at the time of the estate closing. As a general matter, Johnson argues that the liquidation trust never served any real purpose. Johnson contends that "the only purpose ever served by the liquidating trust is that it funded [Hughes, Thorsness's] legal efforts to resist review of its professional fees" and argues that the creation and administration of the trust generated unnecessary legal fees. The probate master considered testimony from Manley and the public administrator explaining that they chose to establish the liquidation trust to indemnify the public ad-

---

**42.** *Cf. In re Estate of O'Neill,* 168 Mich.App. 540, 425 N.W.2d 133, 135 (1988) (concluding that attorney's time sheets were unreliable because attorney relied on "cursory glance" through his daily calendars to compute his billing); *In re Estate of Kiebler,* 131 Mich.App. 441, 345 N.W.2d 713, 714 (1984) (holding that attorneys had not proven that expenses were reasonable even though they submitted a fifty-two-page statement of services with itemized entries, because some of the entries were vague); *In re Estate of Gillett,* 139 Misc.2d 188, 527 N.Y.S.2d 690, 692 (N.Y.Sur.1988) (reducing the fee awarded to the attorney/fiduciary of the estate because "a good deal of the services involved telephone calls to various people with no indication as to the substance and purpose of the [calls]"); *In re Estate*

*of Sonovick,* 541 A.2d at 376; *In re Estate of Eisenberg,* 433 So.2d at 543.

**43.** Due to the lengthy delays in this case, we are reluctant to remand the case for further proceedings. *Cf. State v. Kenaitze Indian Tribe,* 83 P.3d 1060, 1071 (Alaska 2004) (reaching the merits rather than remanding due to delays in case). In fact, Johnson has specifically asked us not to remand the case for further proceedings due to the time that has passed since Clifford Johnson's death. We decline to remand this case and instead vacate the superior court's judgment to the extent that the fees were not supported by the evidence. *Cf. Alaska Statebank v. Fairco,* 674 P.2d 288, 294 (Alaska 1983) (setting aside portion of award not supported by evidence).

ministrator and the estate from potential tax liability. Because the probate master weighed credible testimony regarding the purpose of the liquidating trust, we conclude that it was not an abuse of discretion for the probate court to find that the creation of the trust was necessary.

 Johnson next challenges the superior court's order granting partial summary judgment to Hughes, Thorsness regarding attorney's fees paid from the liquidation trust between March 1993 and September 1996.[44] Johnson asserts that Hughes, Thorsness improperly used money from the trust to defend itself against Johnson's claim that the firm's fees were unreasonable. The superior court found that the payments were "appropriate and authorized under the terms of the Trust which Trust Agreement has been previously approved by the court." The superior court did not determine the reasonableness of the fees incurred, but rather determined "that the submittal of billings and the payment of those billings relating to probate closing matters, trust administration matters and opposition to the Civil Rule 60(b) motion ... was appropriate and authorized under the terms of the trust."

Hughes, Thorsness makes two arguments relating to the payment of fees from the trust. First, Hughes, Thorsness argues that payments from the trust were reimbursable expenses of the personal representative under AS 13.16.435, which entitles the personal representative or a person nominated as personal representative to receive necessary expenses from the estate, including reasonable attorney's fees.[45] But Hughes, Thorsness was neither a personal representative nor nominated as personal representative, and it was seeking reimbursement for the expenses incurred to defend its own fees, rather than

for work performed at the direction of the personal representative.

Hughes, Thorsness's second theory for its recovery of attorney's fees from the trust is that the payments were authorized as an expense of the trust because they were made to defend the trust from Johnson's motion to reopen it. But Hughes, Thorsness only performed limited administrative matters on behalf of the trust,[46] and letters written by Hughes, Thorsness to the public administrator during the relevant time period indicate that the firm viewed itself as opposing Johnson's motion on behalf of the public administrator, not the trustee. In any case, it is not clear that the trustee had a direct interest in launching a broad-based defense against Johnson's Rule 60(b) motion. We conclude that the superior court erred in granting summary judgment regarding funds withdrawn from the liquidation trust to defend Johnson's challenge to Hughes, Thorsness's bills and remand this aspect of the case for further proceedings.[47]

**G. Johnson Is Entitled to Rule 79 Costs and Rule 82 Attorney's Fees.**

 Johnson appeals the superior court's April 28, 2003 order awarding attorney's fees and costs in the amount of $26,838.13 to Hughes, Thorsness. Because Johnson should have prevailed in superior court on the main issue in the case—that Hughes, Thorsness failed to justify all of its fees—and because we are remanding to the superior court with instructions to refund a significant amount of money to the estate, Johnson should have been viewed in the superior court as the prevailing party in this case. We have consistently held that the prevailing party is the party who prevails on the main

---

44. Johnson asserts that the trustee withdrew $20,666 as compensation for the legal fees during this period. Hughes, Thorsness's estimate puts the amount at $20,088.62.

45. AS 13.16.435.

46. Hughes, Thorsness states in its brief: "The total amount attributable to Trust administrative matters amounts to $1,279.06. The amount attributable to final closing expenses of the probate proceedings amounts to $954.72."

47. Hughes, Thorsness also argues that Johnson's objections to the payment of expenses from the liquidation trust were time-barred by the terms of the trust. But because we conclude, as a matter of law, that Hughes, Thorsness could not withdraw money from the trust to defend a challenge to its fees, we decline to interpret the trust as barring Johnson's complaint about the withdrawals.

issues in the case.[48] We have also observed that "[a] plaintiff may prevail even if he or she failed to recover all of the relief prayed for." [49] The purpose of attorney's fees under Civil Rule 82 "is to partially compensate a prevailing party where such compensation is justified and not to penalize a party for litigating a good faith claim." [50] Here, our remand calls for a refund of a substantial portion of the attorney's fees paid by the estate. On remand, Johnson may apply for costs and fees pursuant to Rules 79 and 82.

## IV. CONCLUSION

We REVERSE the superior court's order dated November 15, 1999 reapproving the order approving the final accounting and decree of distribution for this estate, but AFFIRM the superior court's order to disgorge $660 relating to the late renewal of the liquor license. We also REVERSE the superior court's January 16, 2003 order granting partial summary judgment to Hughes, Thorsness on the question of attorney's fees paid from the liquidation trust. We VACATE the superior court's April 28, 2003 order awarding attorney's fees and costs in the amount of $26,838.13 to Hughes, Thorsness. This case is REMANDED for further proceedings regarding the disbursements from the liquidation trust and for the superior court to refund the estate $68,500.

MATTHEWS, Justice, not participating.

---

48. *See, e.g., Blumenshine v. Baptiste,* 869 P.2d 470, 474 (Alaska 1994); *Hillman v. Nationwide Mut. Fire Ins. Co.,* 855 P.2d 1321, 1327 (Alaska 1993); *Hutchins v. Schwartz,* 724 P.2d 1194, 1204 (Alaska 1986); *Alaska Placer Co. v. Lee,* 553 P.2d 54, 63 (Alaska 1976); *Buza v. Columbia Lumber Co.,* 395 P.2d 511, 514 (Alaska 1964).

49. *Blumenshine,* 869 P.2d at 474 (determining plaintiff to be prevailing party even though plaintiff only recovered small fraction of the $700,000 in damages requested).

50. *Id.* (quoting *Malvo v. J.C. Penney Co., Inc.,* 512 P.2d 575, 588 (Alaska 1973)) (internal quotation marks omitted).